UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-mc-61338-COHN

IN RE:

ROTHSTEIN ROSENFELDT ADLER, P.A.,

    Debtor.

_____/

**GOVERNMENT'S OBJECTION TO ORDER GRANTING THE MOTIONS TO TAKE THE DEPOSITION OF SCOTT W. ROTHSTEIN AND GOVERNMENT'S <u>MOTION TO STAY THE TAKING OF THAT DEPOSITION</u>**

COMES NOW the United States of America, by and through its undersigned counsel, and files this Objection to the Order of The Honorable Raymond B. Ray granting, in part, various parties' Motions seeking to depose Scott W. Rothstein (DE 1), with incorporated Motion seeking a stay of proceedings concerning the deposition of Scott W. Rothstein in connection with the pending bankruptcy action and, in support thereof, asserts the following:

<u>Background</u>

The United States is currently investigating the potential criminal liability of individuals associated with Scott Rothstein. The investigation was initiated in or about September 2009 and involves law enforcement personnel from the Federal Bureau of Investigation (FBI) and the Internal Revenue Service (IRS). In or about November 2009, the United States executed search and seizure warrants at the premises of the Rothstein, Rosenfeldt and Adler (RRA) law firm. At that time, the computers of RRA were seized as instrumentalities and repositories of evidence of a crime. Unlike the computers of a typical business, the seizure of computers from a law firm by government agents requires an extensive review by a separate team of government agents and attorneys in order to

prevent the prosecutors and investigating agents from viewing any attorney-client information. An analysis of the computer data has disclosed approximately 850,000 potentially relevant e-mail messages. Teams of law enforcement agents have been reviewing these e-mails to determine whether any attorney-client privileges exist which would mandate those e-mails being quarantined from the prosecution team. Thereafter the e-mails are reviewed to determine their relevance to the ongoing investigation.

As the Court is aware, Rothstein pled guilty to an information which charged him with participation in a racketeering conspiracy and other underlying offenses. The criminal enterprise as charged in the information was the law firm of RRA. Defendant Rothstein admitted to initiating and supervising a massive Ponzi scheme which involved in excess of one billion dollars. In sum and substance, Rothstein and his co-conspirators sold investors non-existent confidential settlements and paid new investors with funds supplied by prior investors.

Rothstein was sentenced to a term of incarceration of fifty years. Rothstein is cooperating with the United States and has provided information regarding his own criminal activity as well as alleged criminal activity committed by others. Numerous debriefings of defendant Rothstein have been conducted since November 2009. The United States, through the participation of the FBI and IRS, has interviewed numerous individuals in an effort to corroborate and confirm such information. Additionally, the agents have been acquiring and reviewing documents which number in the hundreds of thousands of pages. That investigation is ongoing.

The evidence obtained through this investigation has established that RRA was a criminal enterprise which was engaged in wide-ranging criminal activity, including mail and wire fraud, campaign finance fraud, tax fraud, extortion, payments of unlawful gratuities, bank fraud, and

money laundering, among other crimes. The evidence establishes that numerous co-conspirators participated in such activity. To date, five other individuals have been charged with federal offenses arising from the operation of the Ponzi scheme. It is anticipated that an additional multi-defendant indictment will be forthcoming. It is difficult to predict with exactitude when the proposed indictment will be returned, but such indictment is anticipated within the next six months.

The United States is bound by the federal grand jury secrecy laws as contained in Rule 6, Fed.R.Crim.P. In addition, law enforcement sensitive information is being obtained through the instant investigation. Rothstein, as the supervisor, organizer and manager of the criminal enterprise, is the main repository of information which is critical and essential to the ongoing investigation. The law enforcement personnel are attempting to corroborate information obtained from Rothstein. If defendant Rothstein were to be deposed, at the present time, it is feared that such corroborating evidence could be concealed, altered or destroyed. It is anticipated that a deposition of Rothstein would disclose the evidence which forms the basis of the government's proposed case to putative defendants and other targets of the criminal investigation, some of whom are parties to this action. It is further feared that such a disclosure of information, at the present time, would enable coconspirators to obstruct the grand jury's investigation and to corruptly tailor their statements and statements of other witnesses to falsely exculpate themselves. Rothstein's deposition would provide a detailed explanation of the criminal activities of coconspirators. Such information would alert targets of the investigation as to the specifics concerning their potential criminal liability and would potentially reveal to them the identities of other witnesses against them.

The e-mail review, as described above, is tedious and labor intensive. Such e-mail review is necessary to corroborate information obtained from Rothstein and from other relevant witnesses.

Information obtained pursuant to such review is also corroborated by documents obtained by subpoenae. The process of developing relevant and material evidence to support the anticipated criminal indictment is multi-faceted and complex. Obtaining and corroborating legally sufficient evidence to construct cases against such individuals is extremely complex and sensitive in nature. The deposition of Rothstein, at the present time, will hamper severely the efforts of the United States.[1]

<u>The deposition of Rothstein should be stayed pending resolution of the criminal matter</u>.

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." <u>Landis v. North American Co.</u>, 299 U.S. 248, 254 (1936). The authority to stay civil proceedings during the pendency of a criminal prosecution is well-established. See, <u>Rad Services, Inc. v. Aetna Cas. & Sur. Co.</u>, 808 F.2d 271, 279 n.3 (3d Cir. 1986) ("We have in the past upheld the exercise of discretion to stay civil proceedings pending ongoing criminal litigation.") (citations omitted). Courts routinely grant applications by the United States to stay related civil proceedings in order to protect a pending criminal prosecution, "sometimes at the request of the prosecution . . sometimes at the request of the defense." <u>United States v. Kordel</u>, 397 U.S. 1, 12 n.27 (1970) (citing cases). See also, <u>SEC v. Downe</u>, 1993 WL 22126*11 (S.D.N.Y. 1993) ("It is well established that the United States Attorney may intervene in a federal civil action to seek a stay of discovery when there is a parallel criminal proceeding, which is anticipated or already underway,

---

[1] In the event that this Court requires additional and specific factual information concerning the ongoing federal grand jury investigation, the government respectfully submits that such information should properly be transmitted <u>in</u> <u>camera</u> and <u>ex</u> <u>parte</u>. See, <u>Eastwood v. United States</u>, 2008 WL 444661 (E.D.Tenn. 2008) and cases cited therein.

that involves common questions of law or fact"). A district court has discretion to stay a civil action in favor of parallel criminal proceedings if a stay is in the interest of justice. Keating v. Office of Thrift Supervision, 45 F.3d 322, 324 (9th Cir. 1995). Factors a court should consider in determining whether to stay a civil case include (1) the interest of the plaintiff in proceeding expeditiously with the civil litigation and the potential prejudice to the plaintiff caused by delay; (2) the potential burden imposed upon defendants; (3) the efficient use of judicial resources; (4) the interests of non-parties to the civil litigation; and (5) the public interest in the two actions. Id. at 324-25; see also, Fed. Sav. and Loan Ins. Corp. v. Molinaro, 889 F.2d 899, 902-903 (9th Cir. 1989). These factors favor granting the stay sought by the United States.[2] The main prejudice to the United States from allowing the deposition of Rothstein to proceed is harm to the government's ongoing criminal investigation. As a general matter, courts have long recognized that the need to enforce the criminal laws is a compelling factor in considering whether to stay a related civil proceeding. As Judge Wisdom of the Fifth Circuit explained:

> The very fact that there is a clear distinction between civil and criminal actions requires a government policy determination of priority: which case should be tried first. Administrative policy gives priority to the public interest in law enforcement. This seems so necessary and wise that a trial judge should give substantial weight to it . . . .

Campbell v. Eastland, 307 F.2d 478, 487 (5th Cir. 1962). The courts have emphasized repeatedly

---

[2] The government recognizes that, insofar as prejudice may flow to any of the interested parties if the Court grants the relief sought herein, that prejudice is limited to the Trustee, whose ability to pursue claims against third parties may be hampered by a period of significant delay. Therefore, the government is prepared to make accommodations to the Trustee which will enable him to receive all of the information necessary to his carrying out his responsibilities without the necessity of a formal deposition of Rothstein in accordance with Bankruptcy Rule 2004 at this time.

5

that parties should not be permitted to use the civil discovery process to subsume or circumvent the more limited discovery permitted in criminal matters. See SEC v. Downe, supra., 1993 WL 22126, at *12 (noting that liberal discovery rules in civil litigation may undermine a potential criminal prosecution which parallels the subject matter of the civil action). Commencement of full civil discovery in this case would substantively harm the interests of the United States in investigating and prosecuting the criminal matter. The Federal Rules of Civil Procedure authorize broad discovery of both parties and nonparties See, e.g., Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . ."); see also In re Steffen, 433 B.R. 879, 883 (M.D. Fla. 2010) ("The Federal Rules of Bankruptcy Procedure incorporate the discovery procedures set forth in the Federal Rules of Civil Procedure to govern adversary proceedings."). In contrast, discovery under the Federal Rules of Criminal Procedure is circumscribed. Federal Rule of Criminal Procedure 16 generally limits discovery to certain statements of a defendant (Rule 16(a)(1)(A)), a defendant's prior criminal record (Rule 16(a)(1)(D)), and other information that is "material to preparing the defense," that "the government intends to use . . . in its case-in-chief at trial," or that "was obtained from or belongs to the defendant." (Rule 16(a)(1)(E)). Moreover, Rule 16(a)(2) expressly does not authorize discovery of "reports, memoranda, or other internal government documents" or "statements made by. . . prospective government witnesses except as provided in 18 U.S.C. § 3500." The Jencks Act (18 U.S.C. § 3500) provides that in criminal cases, the statements of United States witnesses shall not be "the subject of subpoena, discovery, or inspection until said witness has testified on direct examination in the trial of the case." Absent "exceptional circumstances" and a court order, a criminal defendant may not conduct depositions in a criminal case. Rule 15(a)(1), Fed.R.Crim.P.  A defendant's obligations

to provide discovery to the United States are similarly limited. See, Rule16(b), Fed.R.Crim.P. Here, an essential witness who is part of the criminal case will be subject to deposition by parties not part of the criminal prosecution. The material generated through this civil discovery could potentially be obtained and used by Rothstein's co-conspirators to their advantage in the criminal matter. This consideration is exacerbated in the instant case as some of the putative defendants in the anticipated indictment are parties to this proceeding. Compelling information from Rothstein by requiring him to sit for depositions in this proceeding would seriously impede the United States' ability to prosecute a case against Rothstein's co-conspirators and to continue its ongoing investigation. Compare, Campbell v. Eastland, supra., 307 F.2d at 487.

Additionally, granting precedence to criminal matters often also leads to a more efficient use of judicial resources when civil and criminal proceedings overlap because the criminal case often brings issues into focus and resolves disputed issues. See, United States v. Mellon Bank, N.A., 545 F.2d 869, 873 (3d Cir. 1976) (noting that "resolution of the criminal case [may] moot, clarify, or otherwise affect various contentions" in the civil action); Brock v. Tolkow, 109 F.R.D. 116, 120 (E.D.N.Y. 1985) ("[R]esolution of the criminal case might reduce the scope of discovery in the civil case or otherwise simplify the issues."). In this instance, there is every reason to expect that allowing the criminal matter to proceed unhindered by civil discovery will define, moot, and clarify issues common to both cases. Further, this refinement of the issues may spur settlement discussions. See, Trustees of Plumbers and Pipefitters Nat. Pension Fund v. Transworld Mechanical, Inc., 886 F. Supp. 1134, 1140 (S.D.N.Y. 1995) ("[R]esolution of the criminal case may increase the possibility of settlement of the civil case due to the high standard of proof required in a criminal prosecution."). Finally, the proposed stay would benefit the public interest. The public has a vital interest in a well-

functioning criminal justice system.  Compare, SEC v. Nicholas, 569 F. Supp. 2d 1065, 1072 (C.D. Cal. 2008) (noting the "primary importance" of the criminal case to the public and the "vital interest" in maintaining the integrity of public markets). The proposed stay would enable the United States to vindicate the paramount public interest in the enforcement of federal criminal laws in the collapse of RRA.

## IV. Conclusion

For the foregoing reasons, the United States respectfully requests that the Court stay the deposition of Scott W. Rothstein for a minimum of 180 days.

        Respectfully submitted,

        WIFREDO A. FERRER
        UNITED STATES ATTORNEY

By:   /s/ Lawrence D. LaVecchio
        LAWRENCE D. LaVECCHIO
        Assistant United States Attorney
        Fla Bar No. 305405

        /s/ Paul F. Schwartz
        PAUL F. SCHWARTZ
        Court I.D. No. A5500086

        /s/ Jeffrey N. Kaplan
        JEFFREY N. KAPLAN
        Court I.D. No. A5500030

        500 E. Broward Blvd., Suite 700
        Ft. Lauderdale, Florida 33394
        Tel: (954) 356-7255
        Fax:(954) 356-7230

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on June 17, 2011 I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.

    /s/ Lawrence D. LaVecchio
LAWRENCE D. LaVECCHIO
ASSISTANT UNITED STATES ATTORNEY