IN THE CIRCUIT COURT OF THE 15th JUDICIAL CIRCUIT
IN AND FOR PALM BEACH COUNTY, FLORIDA

CIVIL DIVISION
CASE NO. 502009CA040800XXXXMB-AG
Judge David F. Crow

JEFFREY EPSTEIN,

    Plaintiff,

v.

SCOTT ROTHSTEIN, individually and
BRADLEY J. EDWARDS, individually,

    Defendants.
_____/

## CORRECTED SECOND AMENDED COMPLAINT

The Plaintiff, Jeffrey Epstein, ("Epstein"), by and through his undersigned attorneys, files this action against the Defendants, Scott Rothstein, ("Rothstein") and Bradley J. Edwards ("Edwards") (collectively referred to as "Defendants") and alleges:

## INTRODUCTION

This litigation has at its core a law firm that has been described by a United States Attorney as a criminal enterprise. Its founder, Scott Rothstein — Edwards' partner, is currently serving a 50-year sentence in federal prison for selling fake settlements to unsuspecting investors. Through the law firm of Rothstein, Rosenfeldt and Adler, P.A ("RRA"), Rothstein and others in this criminal enterprise conducted a $1.2 billion Ponzi scheme which was perpetrated with fake agreements, forged signatures and a fundamental corruption of the many legal protections that the legal system has in place. By claiming to be engaged in what was essentially legal extortion, Rothstein persuaded investors, that he could pressure defendants, including Epstein, into paying astronomical settlements and further defrauded investors by convincing them to purchase fake interests in assignments of fictitious structured settlements,

**EXHIBIT 1**

FOWLER WHITE BURNETT P.A. • 901 PHILLIPS VE, WEST PALM BEACH, FLORIDA 33401 • (561) 802-9044

including those falsely claimed to have been reached by RRA for Edwards' clients with claims against Epstein, to the detriment of the Plaintiff. Defendant Edwards made improper use of the judicial system and civil process by *inter alia* filing a complaint in federal court, although a state court complaint had been pending on behalf of the same plaintiff for almost a year, engaging in unreasonable and vexatious discovery and motion practice in certain underlying actions against Epstein, making unfounded and highly charged sexual allegations in these underlying actions, and using improper investigatory tools, and causing damages to Epstein. The United States government has stated that Rothstein conspired with others to use RRA as a criminal enterprise to conduct a racketeering activity, including mail and wire fraud, money laundering and conspiracy.

## GENERAL ALLEGATIONS

1. This is an action for damages in excess of fifteen thousand dollars ($15,000.00), exclusive of interest and costs.

2. Epstein is domiciled in Palm Beach County, Florida.

3. Rothstein was at all relevant times a resident of Broward County, Florida, and the chairman, managing partner and chief executive officer of a law firm called Rothstein, Rosenfeldt & Adler, P.A. ("RRA"), whose main office was in Broward County.

4. Edwards is a resident of Broward County, Florida, and is licensed to practice law in the state of Florida.

5. Beginning in April, 2009, and at all relevant times, Edwards was a partner in RRA.

FOWLER WHITE BURNETT P.A. • 901 PHILLIPS POINT WEST, 777 SOUTH FLAGLER DRIVE, WEST PALM BEACH, FLORIDA 33401 • (561) 802-9044

## The Ponzi Scheme

6. During 2009 Rothstein pursued a course of criminal conduct which included a scheme to defraud various investors into purchasing fake interests in assignments of fictitious structured settlements by showing them complaints filed in the Edwards' cases against Epstein, which settlements were falsely claimed to have been reached by RRA on behalf of clients, including clients who had brought legal actions against the Plaintiff, in exchange for immediate payments to these clients of a discounted lump sum amount.

7. The purpose of the investments was to enrich Rothstein, along with other members of RRA and others, to sustain the daily operations of RRA, and specifically, among other things, to raise capital to continue to fund investigators which were to be used in the prosecution of claims against the Plaintiff.

8. At or near the time that Rothstein and others in his firm, many of whom have pled guilty to federal crimes, were pursuing this Ponzi scheme, RRA was also engaged in litigation against Epstein in three civil cases. The cases were *Jane Doe v. Epstein*, Case No. 08-CIV-80893 ("Jane Doe"), U.S. District Court, Southern District of Florida; *L.M. v. Epstein* ("LM"), Case No. 50-2008 CA 028051XXXXMB-AB; and *E.W. v. Epstein* ("EW" or "Jane Doe #2"), 50-2008 CA 028058XXXXMB-AB (collectively, the "Epstein Actions").

9. The lead attorney for RRA handling the Epstein Actions was Defendant Edwards.

10. Beginning in approximately the spring of 2009 through October, 2009, in support of the massive Ponzi scheme, Rothstein made various representations to potential investors regarding the Epstein Actions, as well as other alleged claims against Epstein, including, but not limited to, the following:

FOWLER WHITE BURNETT P.A. • 901 PHILLIPS POINT WEST, 777 SOUTH FLAGLER DRIVE, WEST PALM BEACH, FLORIDA 33401 • (561) 802-9044

    (1) That RRA had settled one case for at least Thirty Million Dollars ($30,000,000);

    (2) That RRA had a team of investigators consisting of former law enforcement officers, including a former sheriff, who would use this sophisticated eavesdropping equipment and sift through a potential defendant's garbage looking for damaging evidence that could be used to benefit RRA clients by enhancing the value of the clients' claims, and thereby engaging in tactics tantamount to legal extortion;

    (3) That Rothstein had meetings with Epstein's alleged victims and their families regarding the structured settlements;

    (4) That these victims would take a lesser settlement if paid promptly and that investors who funded these early payments would be paid their investment plus a return when Epstein paid the greater amounts to settle the claims;

    (5) That in addition to the Epstein Actions, many women were lined up to settle with Epstein with claims for hundreds of millions of dollars;

    (6) That RRA attorneys would sue Epstein and disclose embarrassing information about Epstein, his family, friends and associates unless Epstein paid exorbitant settlements;

    (7) That if the potential investors did not make investments as promised on a strict timetable, RRA risked being fired and would lose the cases they had against Epstein to other lawyers; and

    (8) That one of the RRA clients felt that Rothstein had lied to her repeatedly about funding, and that she was one step away from going to another lawyer and going to the Florida Bar.

  11. RRA employed a team of investigators on the Epstein Actions, including Michael Fisten ("Fisten") and former Broward County Sheriff and convicted felon Ken Jenne ("Jenne").

  12. Fisten and Jenne were the primary investigators assigned to Edwards, and routinely reported to Edwards and Rothstein regarding their investigations of Epstein.

  13. Edwards brought the clients Jane Doe, EW, and LM to RRA when he joined the firm in April, 2009.

  14. Rothstein approved Edwards incurring costs between $110,000 to $200,000 on the Epstein Actions, costs paid for as the proceeds of its massive fraud.

- 4 -

15. In October, 2009, Rothstein directed Edwards' investigative team to bring case files into a conference room at RRA to be examined by potential investors. Then, Fisten and Jenne brought in the case files for the Epstein Actions, which numbered as many as nineteen (19) boxes.

16. On or about October 13, 2009, Dean Kretschmar ("Kretschmar"), a representative of one of the investor groups, was encouraged by Rothstein, in a meeting with other partners of RRA, to look at the Epstein case files that Fisten and Jenne had stacked around the conference room.

17. On or about October 13, 2009, Illinois attorney, Michael Legamaro, and his client, hedge fund operator Thane Ritchie, were also invited to examine Epstein case files and a flight log displayed by Rothstein that allegedly contained the names of numerous celebrities who purportedly flew on Epstein aircraft. Mr. Legamaro and his client reviewed both the flight log and the case files in the offices of RRA.

18. The Epstein case files were displayed to potential investors in RRA's office to show them that the cases against Epstein were legitimate and that the alleged victims actually existed, all for the purpose of obtaining the investments.

19. Although Edwards has given sworn deposition testimony that only a few attorneys employed at RRA were directly involved in the prosecution of the Epstein Actions, a privilege log prepared by Edwards, and other documents, clearly reflect that more than eighteen (18) RRA lawyers were involved in prosecuting the Epstein Actions. Additionally, four RRA investigators and several legal assistants and paralegals were involved in the Epstein Actions.

- 5 -

FOWLER WHITE BURNETT P.A. • 901 PHILLIPS POINT WEST, 777 SOUTH FLAGLER DRIVE, WEST PALM BEACH, FLORIDA 33401 • (561) 802-9044

20. On multiple occasions, and in contrast to Edwards' sworn testimony, many RRA attorneys conferred and were involved with the prosecution of the Epstein Actions, including as described below:

    a) On May 3, 2009, Russell Adler ("Adler"), a name partner in RRA, who took part with Edwards in the prosecution of the Epstein Actions, sent an email to the staff and attorneys in RRA regarding depositions in the Epstein Actions;

    b) On July 17, 2009, Jenne sent an email to Edwards about the Epstein Actions;

    c) On July 18, 2009, Edwards sent an email to Adler, stating that "with the right moves we could force Epstein to settle for a lot of money";

    d) On July 22, 2009, Edwards sent an email to the Attorneys at RRA requesting a litigation meeting. On July 23, 2009, Priscila Nascimento, one of the secretaries to Rothstein, was advised of the scheduled meeting;

    e) On July 29, 2009, Cara Holmes, an attorney at RRA working on the Epstein cases, and a former agent for the Federal Bureau of Investigation, sent an email to Edwards stating that "our best bet is to go after those close to Epstein";

    f) In July, 2009, Edwards and co-counsel, Paul Cassell, exchanged emails about their lack of proof on a previously-filed motion, which claimed that Epstein was moving his assets to avoid paying any judgments that may be obtained by RRA clients against Epstein;

    g) On August 13, 2009 an email was sent from Rothstein to Mark Nurik ("Nurik"), an attorney at RRA, regarding legal research on causes of action against Epstein. On that same day, Nurik sent an email to Rothstein regarding discussions about Epstein. Also on August 13, 2009, Adler sent an email to Rothstein regarding legal research on the causes of

FOWLER WHITE BURNETT P.A. • 901 PHILLIPS POINT WEST, 777 SOUTH FLAGLER DRIVE, WEST PALM BEACH, FLORIDA 33401 • (561) 802-9044

actions against Epstein. On August 14, 2009, Edwards sent an email to RRA attorneys called litigation strategy regarding Epstein;

  h) On August 17, 2009, Edwards sent an email to Nurik regarding a legal opinion on the Epstein matter;

  i) In the month of August, 2009, Edwards, Jenne and Fisten, exchanged emails on approximately four occasions discussing investigative techniques and other Epstein matters;

  j) In the month of September, 2009, emails were exchanged between Edwards and William Berger ("Berger"), a partner at RRA who also participated in the Epstein actions, regarding Litigation Strategy.

  k) On September 11, 2009, Edwards sent an email to Elizabeth Villar, a legal assistant to Rothstein, about Epstein's alleged asset transfers; and

  l) On September 4 and again on September 9, 2009, Edwards and Fisten exchanged emails on Epstein Litigation Strategy.

21. By August, 2009, Edwards was aware that RRA's offices were audio monitored and recorded, including discussions on speakerphone.

22. Beginning in October, 2009, the level of communications by and between Edwards and others, including Rothstein, described below, increased dramatically, as Rothstein was running out of money, and was in search of new victims in order to continue to perpetuate the Ponzi scheme, and coincided with Rothstein's efforts to get the investments for the Epstein actions concluded. Those communications include:

FOWLER WHITE BURNETT P.A. • 901 PHILLIPS POINT WEST, 777 SOUTH FLAGLER DRIVE, WEST PALM BEACH, FLORIDA 33401 • (561) 802-9044

    a)     From October 5, 2009 to October 18, 2009, emails were sent between Edwards and Berger, Edwards and Fisten, and Edwards and RRA attorneys regarding Epstein Litigation Strategy.

    b)     On October 19, 2009, Edwards sent an email to Nurik on JEE [Epstein] Evidence.

    c)     During this same time frame Rothstein was exchanging emails with the investors for the Epstein cases, telling them that if the investment was not made soon he would lose the client group to other lawyers.

    d)     During this same time frame, specifically on or around October 13, 2009, Kretschmar and Legamaro of the investor group were shown by Rothstein the actual case files of RRA in the Epstein Actions. The Epstein files were brought to the conference room by Fisten and Jenne.

    e)     During this same time frame, on or around October 21, 2011, A.J. Discala, a potential investor in the Epstein matters, sent an email to Rothstein about the private placement memoranda for the investment.

23.    On October 22, 2009, the following events occurred:

    a)     Edwards sent an email to book a conference room for as many attorneys as possible to attend a meeting on October 23, 2009 on the Epstein Actions. The email requested that Jenne, Adler, Berger, Barry Stone, Mike Wheeler, Cara Holmes, Rob Buschel, Fisten, Steve Jaffe, and Nurik attend;

    b)     Nurik emailed Edwards about the meeting;

    c)     Edwards sent an email to Pat Diaz, another investigator on the Epstein case, regarding " new developments which require your expertise."

- 8 -

24. On October 23, 2009, the following events occurred:

a) Jenne sent an email to Rothstein advising him of an October 23, 2009 meeting;

b) Rothstein emailed the investors that the Epstein client is going to another lawyer if the investment is not made right away;

c) Rothstein sent an email to Adler regarding causes of action against Epstein;

d) Adler sent an email to RRA attorneys on Epstein litigation strategy;

e) Edwards sent an email to RRA attorneys on Epstein litigation strategy;

f) Edwards sent an email to RRA attorneys regarding causes of action against Epstein;

g) Adler sent an email to Rothstein regarding causes of action against Epstein;

h) Rothstein sent to Legamaro, counsel for the Investors, an email regarding the causes of action against Epstein.

Based upon the foregoing, Rothstein received information from Edwards and Adler regarding causes of action against Epstein, and Rothstein then sent information regarding causes of action against Epstein to Legamaro, counsel for the Investors for the purpose of obtaining funds for the Ponzi scheme.

25. Given the interdependence of so many RRA lawyers, investigators, and other staff, and the wide communications that necessarily accompanied the involvement of so many people, Edwards knew, or should have known, that his Epstein case files were being shown and touted to investors and that he was assisting and aiding Rothstein to close the deal with the

- 9 -

investors, particularly where the magnitude of the potential settlements in the Epstein Actions was a key selling point.

26. In October, 2009, Rothstein convinced investors to put up money to realize a substantial return emanating from the fraudulent settlement of the Epstein cases.

27. In November, 2009, RRA collapsed and ultimately went into bankruptcy and Rothstein voluntarily relinquished his law license and was disbarred by the Florida Supreme Court.

28. Subsequently, Rothstein was arrested, arraigned in federal court, pled guilty and ultimately was sentenced to a 50-year prison sentence for fraud and racketeering, based on an alleged $1.2 billion Ponzi scheme designed, among other things, to infuse funds into RRA, his own pockets, and those of his cohorts. The federal government called RRA a criminal enterprise.

## COUNT I: ABUSE OF PROCESS - EDWARDS

29. Plaintiff realleges each and every allegation contained in paragraphs 1 through 28 as if they were fully set forth here.

30. Edwards made illegal, improper and perverted use of the civil process as follows:

(a) On September 11, 2008, Edwards filed a state court action on behalf of client L.M. against Epstein seeking damages. On July 22, 2009, Edwards sent an email to the Attorneys at RRA requesting a litigation meeting.

(b) On July 24, 2009, Edwards, on behalf of client L.M., filed a two hundred and thirty four (234) page, one hundred fifty-six (156) count complaint against Epstein in U.S. District Court for the Southern District of Florida styled *L.M. v Epstein*, Case Number 09-CIV-81092. However, Epstein was never served. The case was filed with a misspelling of Epstein's

- 10 -

FOWLER WHITE BURNETT P.A. • 901 PHILLIPS POINT WEST, 777 SOUTH FLAGLER DRIVE, WEST PALM BEACH, FLORIDA 33401 • (561) 802-9044

last name so as not to alert the defendant that the case had been filed. Each of the one hundred and fifty-six counts (156) is a separate cause of action pursuant to 18 U.S.C. §2255, which provides a civil remedy authorizing damages of no less than $150,000 *per violation*. Thus, Edwards sought total damages in excess of Twenty-Three Million Four Hundred Thousand Dollars ($23,400,000.00). Edwards knew or should have known that highly-charged sexual allegations in that complaint that Epstein forced L.M. to have "oral sex" with him were false. Edwards' client confirmed this fact in her deposition, but Edwards never amended the complaint.

(c) On or about October 13, 2009, Attorney Legamaro and his client, potential investor, Thane Ritchie, were shown Epstein case files at RRA for the purpose of obtaining Richie's investment in the Epstein actions. Epstein believes that the federal complaint in *L.M. v. Epstein* was shown to Legamaro and Ritchie at that time and that it was prepared by Edwards with highly-charged sexual allegations *solely* to be shown to induce investment in the Epstein Actions and advance the Ponzi scheme, as demonstrated by the fact that Edwards never served Epstein with a summons and complaint in that federal action, which action was filed long *after* Edwards filed and served a state court civil action on behalf of L.M.

31. On or about October 17, 2009, Edwards, who had filed a state complaint against Epstein on behalf of E.W., emailed Edwards' assistant to file a federal complaint against Epstein on behalf of E.W, like the one Edwards had filed in federal court on behalf of L.M.

32. Edwards also made illegal, improper and perverted use of the civil process in order to bolster the case to investors by utilizing it to conduct unreasonable and unnecessary "discovery," making unfounded allegations, and engaging in improper motion practice, including but not limited to:

FOWLER WHITE BURNETT P.A. • 901 PHILLIPS POINT WEST, 777 SOUTH FLAGLER DRIVE, WEST PALM BEACH, FLORIDA 33401 • (561) 802-9044

  (1) Deposing three airplane pilots employed by Epstein, and seeking a deposition of a fourth pilot; collectively, the three were deposed for over twelve hours but were not asked a single question relating to any of the claims of Edwards' clients. Instead they were asked many inflammatory questions that had no legitimate legal purpose;

  (2) Noticing and subpoenaing for deposition the following people:

    (a) Donald Trump (a real estate investor and television personality);

    (b) Alan Dershowitz (a renowned Harvard Law Professor and one of Epstein's criminal defense lawyers);

    (c) David Copperfield (illusionist);

    (d) Individuals who had knowledge of Epstein's charitable, political or other donations.

  (3) Taking the deposition of Mark Epstein, brother of the Plaintiff, but not asking any questions about Edwards' clients;

Edwards targeted the foregoing individuals because they were close to Epstein, not because they had any connection to, or knowledge of, the claims of Edwards' clients. Edwards' intent was to harass Epstein's friends, family and acquaintances;

  (4) Asking outrageous questions of the Plaintiff in depositions which had no legitimate bearing on the cases or the issues to be tried, including questions regarding the size of his genitalia, whether witnesses would leave their children alone with the Plaintiff;

  (5) Conducting irrelevant and meritless discovery by issuing a subpoena to obtain records from an alleged sex therapist, Dr. Leonard Baird in Massachusetts, when issues relating to Epstein's mental and emotional states were not at issue and when Dr. Baird had never even treated the Plaintiff;

(6) Directing and filing of Notices for the following health care professionals to produce medical records of Epstein, when Epstein's mental and emotional state was not an issue in the case:

    (a) Charles J. Galecki, M.D.;

    (b) Bruce W. Markowitz, M.D.; and

    (c) Steven R. Alexander, Ph.D.;

(7) Directing and filing Notices to the following banks of Epstein, Colonial Bank and Palm Beach National Bank, to produce all financial records of Epstein, allegedly for the purpose of obtaining records of payments by Epstein to the alleged victims, knowing full well that the alleged victims testified to being paid in cash;

(8) Directing and filing of Notices to obtain all records of Epstein's prescriptions and all other health related documents at two local pharmacies, when no issues of Epstein's health had been raised in the Epstein Actions;

(9) Edwards filed motions in the Epstein Actions attempting to plead a cause of action for RICO when there was no good faith basis for doing so; and

(10) Edwards filed motions to freeze assets of Epstein without any evidence that Epstein was attempting to sequester or transfer assets and prior to Edwards obtaining a judgment against Epstein. Ultimately the federal district court found the " motion was entirely devoid of evidence of Defendant's [Epstein] alleged transfers".

33. Edwards had ulterior motives for making these improper uses of civil process which included, among others:

    (1) to facilitate Rothstein's attempts to obtain investments as set forth herein;

- 13 -

(2) obtaining funds for the continued investigation and prosecution of the Epstein Actions;

(3) obtaining operating revenue so that RRA could continue to operate as set forth herein.

34. As a result of the above, the Plaintiff has suffered damages by incurring additional and unnecessary attorney's fees and costs to defend these abuses of process.

WHEREFORE, the Plaintiff, Jeffrey Epstein, demands a trial by jury, a judgment against Defendant Bradley J. Edwards for compensatory damages, interest, costs of this action, and any other relief deemed appropriate by this Court.

### COUNT II: CONSPIRACY TO COMMIT ABUSE OF PROCESS - ROTHSTEIN

35. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 28, and 30 through 32, as if they were fully set forth herein.

36. Rothstein conspired and entered into an express or implied agreement to engage in the tort of abuse of process as part of a plan to defraud investors and further the Ponzi scheme. Rothstein knew or should have known of Edwards' efforts to make illegal, improper, and perverted use of the civil process.

37. The actions described in paragraphs 10 through 24 and 30 through 32 constitute overt acts in furtherance of the conspiracy.

38. As a member of the conspiracy, Rothstein is liable for the acts described herein.

39. As a result of the conspiracy, Epstein has been damaged by incurring additional and unnecessary attorney's fees and costs and the cost of installing an enhanced security system and retention of security personnel for the safety of Epstein and to protect his property.

- 14 -

WHEREFORE, the Plaintiff, Jeffrey Epstein, demands a trial by jury, a judgment against the Defendant, Scott Rothstein, for compensatory damages, costs, interest and any and other relief deemed appropriate by this Court.

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that a true and correct copy of the foregoing has been duly furnished via Email and U.S. Mail, this 24th day of August, 2011:

Jack Scarola, Esq.
Searcy Denney Scarola Barnhart & Shipley, P.A
2139 Palm Beach Lakes Blvd.
P.O. Drawer 3626
West Palm Beach, FL 33409

Jack Alan Goldberger, Esq.
Atterbury Goldberger & Weiss, P.A.
250 Australian Avenue South
Suite 1400
West Palm Beach, FL 33401-5012

Marc S. Nurik, Esq.
Law Offices of Marc S. Nurik
One E. Broward Blvd., Suite 700
Ft. Lauderdale, FL 33301

Martin Weinberg, Esq.
Martin G. Weinberg, P.A.
20 Park Plaza, Suite 1000
Suffolk, MA 02116

Respectfully submitted,

_Jay M. Clms #0152226 for_
Joseph L. Ackerman, Jr.
Fla. Bar No. 235954

FOWLER WHITE BURNETT, P.A.
901 Phillips Point West
777 South Flagler Drive
West Palm Beach, Florida 33401
Telephone:   (561) 802-9044
Facsimile:    (561) 802-9976

W:\80743\AMECOM71-Corrected Second Amended-HSG.docx

- 16 -

FOWLER WHITE BURNETT P.A. • 901 PHILLIPS POINT WEST, 777 SOUTH FLAGLER DRIVE, WEST PALM BEACH, FLORIDA 33401 • (561) 802-9044