UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO.: 11-61338-CIV-COHN

In re:   ROTHSTEIN ROSENFELDT ADLER, P.A.

Debtor.
_____/

**RAZORBACK VICTIMS' MOTION FOR CLARIFICATION OR, ALTERNATIVELY, MOTION ALTERING OR AMENDING ORDER GRANTING THE MOTIONS OF THE TRUSTEE AND JEFFREY EPSTEIN TO ISSUE A WRIT OF HABEAS CORPUS AS TESTIFICANDUM [DE 129]**

The Razorback Victims,[1] by and through undersigned counsel, request the Court to clarify and/or amend its ruling set forth in its order dated February 13, 2012 [D.E. 129] (the "February 13th Order") which, among other things, granted the Razorback Victims[2] "access" to the second Rothstein deposition to "observe" questions posed by insurers in a $70 million insurance coverage action involving various Banyon entities, but precluded the Razorback Victims from questioning or cross-examining Rothstein, or interposing objections. In addition, the February 13th Order omits mention of the Razorback Victims request to participate in the second Rothstein deposition for purposes of their state court lawsuit against Ted Morse and

---

[1] "Razorback Victims," refers to various plaintiffs in the Broward County Circuit Court Case No.: 09-062943(19), namely: Razorback Funding, LLC, D3 Capital Club, LLC, BFMC Investment, LLC, Linda Von Allmen As Trustee Of The Von Allmen Dynasty Trust, D&L Partners, LP, David Von Allmen, As Trustee of The David Von Allmen Living Trust, Ann Von Allmen, As Trustee Of The Ann Von Allmen Living Trust, Dean Kretschmar, Cooper Management, Anthony Degennaro As Trustee Of The Extra Inning Dynasty Trust, Adele Mussry, Jack Mussry, Nassim Mussry, Melina El-Ani, Danielle El-Ani, H&N Associates, Aretz Associates, Park National Capital Funding, LLC, Park National Mortgage Servicing, Scott Morgan, Viceroy Global Investments, Inc., Concorde Capital, Inc., Sussco, inc., Edward Paley, Florence Paley, the Edward And Florence Paley Foundation, Steven Paley, Laura Paley, Jane Zaretsky, Steven Zaretsky, As Trustee Of The Jane Zaretsky Dynasty Trust, Lawrence E. Dekelbaum, and Shalom Strictly Kosher Meats, Inc.

[2] Razorback Funding, LLC, one of the Razorback Victims, is the joint loss payee with various Banyon entities under the crime-fraud insurance policy.

Morse Operations arising from the Ponzi scheme[3]. As grounds for this motion, the Razorback Victims state:

## I. INTRODUCTION

On February 13, 2012 the Court granted the Trustee's and Jeffrey Epstein's motion to issue a writ of habeas corpus *ad testificandum*, which authorized a second round of Rothstein depositions in June of this year. Among other things, the Order permits various insurance companies to question Rothstein during the second round in connection with two pending lawsuits concerning a $70 million crime-fraud policy covering various "Banyon"[4] entities (the "Banyon" entities were large scale feeder funds for Rothstein's Ponzi scheme).

Razorback Funding, LLC is a "joint loss payee" with various Banyon entities under the Banyon crime-fraud policy. Simply put, a "loss payee" is a third party -- i.e., an entity other than the insured beneficiary of the policy (here, Banyon) -- entitled to payment under the policy in relation to the insured risk (here, Rothstein's fraud). As joint loss payee entitled to remuneration under the crime-fraud policy, Razorback Funding, LLC has a significant interest in participating in Rothstein's second deposition in a meaningful way.

Although the Court recognized the need to have Rothstein answer questions relating to the crime-fraud policy and, accordingly, permitted the insurance companies to question Rothstein in the second deposition, the Court limited the Razorback Victims' participation to "access" and "observ[ation]" of the insurers' questions. In other words, the Razorback Victims cannot question or cross-examine Rothstein, or interpose objections to the insurers' questions. The Court reasoned that the Razorback Victims already participated in the first round of

---

3 The Razorback Victims and the plaintiffs in the Morse Lawsuit are the same.

[4] The "Banyon" entities were large scale feeder funds for Rothstein's Ponzi scheme.

Rothstein depositions held in December of 2011 and, accordingly, should have no need to ask additional questions. Although the Razorback Victims did partake in the first round of Rothstein's deposition, the Razorback Victims were prohibited by stays from taking Rothstein's deposition in the two pending district court actions relating to the Banyon crime-fraud policy. *See* enclosed **Composite Exhibit "A,"** attaching the Notice of Filing Paperless Order Staying and Administratively Closing Case [DE 1029] in the Southern District of Florida Court case number 0:10-cv-60171-JAL, and Order [DE 67] staying the Middle District of Florida Court case number 8:10-cv-00682.[5]

Notwithstanding, the February 13th Order stated that it would consider expanding the Razorback Victims' participation in the second deposition provided that they could "demonstrate a specific need" to do so. As will be explained here, the Razorback Victims have a "specific need" to question Rothstein for two principled reasons:

➢ **The Morse Lawsuit**. The Razorback Victims recently filed a lawsuit against Edward J. Morse, Jr. ("Ted Morse") and Morse Operations, Inc. ("MOI") concerning their involvement in Rothstein's Ponzi scheme (the "Morse Lawsuit").[6] The Morse Lawsuit was not filed when the Court ordered the first Rothstein deposition and, therefore, the case number is not

---

[5] Both stays were entered due to the involuntary bankruptcy petition filed against Banyon 1030-32. (Razorback Funding, LLC is the Plaintiff in the Southern District of Florida case listed above.) Notwithstanding, it is anticipated that a stipulation will be reached with the Banyon bankruptcy trustee permitting Scott Rothstein's deposition to be taken for purposes of the litigation relating to the crime-fraud insurance policy.

[6] The Razorback Victims contemporaneously have filed a motion for writ of habeas corpus *ad testificandum* to require Rothstein to appear at the second deposition for purposes of the Morse Lawsuit. A copy of the Morse Lawsuit is attached as **Exhibit "A"** to the motion for writ of habeas corpus *ad testificandum*. Although the Razorback Victims believe that a motion for a separate writ was unnecessary given the Court's order permitting interested parties an opportunity to respond to the Trustee's request, they have filed a separate motion out of an abundance of caution.

noticed in the record. Morses' counsel has been quite clear that they will oppose the introduction in the Morse Lawsuit of Rothstein's testimony from his first deposition.

➢ **Crime-Fraud Loss Payees**. As loss payees under the crime-fraud policy, the Razorback Victims have a specific need to object to the insurers' questions and cross-examine Rothstein on the issues the raised by the insurance companies.

## II. DISCUSSION

A. **The Morse Lawsuit**

For approximately a year before the December deposition, counsel for the Razorback Victims analyzed thousands of documents obtained during discovery in their well-publicized lawsuit against TD Bank (and others) to determine if any of the Morses were involved in Rothstein's Ponzi scheme and if viable claims existed against them. These documents paint quite a different picture of Ted Morse and MOI than the one portrayed to the public and the bankruptcy trustee -- that of Rothstein's victims. Rather, the documents revealed that Ted Morse was a knowing and willing participant and net-winner in Rothstein's scheme, and had transformed the family business (MOI) into a crime-fraud organization in the process.

Because it was uncertain whether Rothstein would be made available for a deposition again in the future and suspecting that he would corroborate the overwhelming documentary evidence of Ted Morse's and MOI's involvement in his scheme, the Razorback Victims' counsel (William Scherer) questioned Rothstein about it at the December deposition. Rothstein -- who is one of the only witnesses with direct personal knowledge of Ted Morse's and MOI's

involvement in the scheme -- quickly implicated them on the first day of his deposition (December 12, 2011).[7] The Morse Lawsuit was filed the next day (December 13, 2010).[8]

When the Razorback Victims' counsel questioned Rothstein about Ted Morse and MOI during the deposition, the Morses' lawyer (John Mullin) objected and stated on the record that he would move to preclude the use of Rothstein's testimony in any later-filed lawsuit against his clients:

> MR. MULLIN: I'm going to object. This is John Mullin, Tripp Scott, we're Counsel for Ed and Carol Morse and Morse Operations.
>
> You made a big point, Mr. Scherer, of pointing out the particular lawsuits that are pending and have been part of the protocol, which you have gotten permission to go forward. There' no pending case against the Morses. They are not listed in your 2100 page Complaint and the entire line of questioning about the Morses does not relate to a case in which you have been Court permission to ask questions today.
>
> We object to it. I want a standing objection. *And we're going to move to strike any of this testimony from the use at any future cases you may bring that is not yet of record and not given permission.*

(Rothstein Dep. 64:6–65:22 (emphasis added))[9]. Despite the objection, the Morses introduced evidence during the December deposition and extensively cross-examined Rothstein concerning his allegations against the Morse family and Morse Operations.

Because of the stated intention of counsel for Ted Morse and MOI to seek to exclude Rothstein's December deposition testimony from the Morse Lawsuit, it is necessary that the

---

[7] "Morse" appears 524 times in the transcript of Rothstein's December deposition. Excerpts of Rothstein's deposition relative to Ted Morse and Morse Operations' participation in the Ponzi are attached hereto as **Composite Exhibit "B."**

[8] Ed and Carol Morse are not named defendants in the lawsuit. Defendant Edward J. Morse, Jr. is Ed's son and CEO of Morse Operations, Inc.

[9] Excerpts of Morse counsel's objections are attached hereto as **Composite Exhibit "C."**

Court authorize the Razorback Victims to question Rothstein at his second deposition about the Morse lawsuit.[10]

B.  **Participation as Loss Payee and Party**

As a loss payee under the crime-fraud policy, and plaintiff in litigation pending against the insurers, Razorback Funding, LLC should be able to cross-examine Rothstein on the issues raised by the insurers and object to their questions. As the United States Supreme Court recognized, "[i]n almost every setting where important decisions turn on questions of fact, due process requires an opportunity to confront and cross-examine adverse witnesses." *Goldberg v. Kelly*, 397 U.S. 254, 269 (1970). Clearly such participatory rights are essential here for the Razorback Victims to be able to protect their interests in the crime-fraud policy and the related lawsuits.

### III. LEGAL STANDARD

A district court has plenary power over an interlocutory order and the power to reconsider, revise, alter or amend it. *Toole v. Baxter Healthcare Corp.*, 235 F.3d 1307, 1315 (11th Cir. 2000). The exercise of this power to reconsider and/or modify an interlocutory order is committed to the discretion of the Court. *See United States v. Koenig*, 290 F.2d 166, 172 (5th Cir. 1961). Instructively, motions for review of interlocutory orders fall within "the district court's general discretionary authority to review and revise interlocutory rulings prior to entry of

---

[10] The Razorback Victims would seek to reduce their questioning of Rothstein by avoiding, where possible, asking the same questions asked at Rothstein's December deposition. This can be accomplished if the Morse parties hereafter stipulate to use the first Rothstein deposition in the Morse litigation which, to date, the Morse parties have not agreed. Alternatively, Razorback Victims' counsel could mark Rothstein's first deposition relating to Morse and Morse Operations as an exhibit and ask Rothstein to confirm, subsequent to his review of his prior testimony, that the answers are truthful and accurate. This would obviate the need to re-ask the questions and would afford the Morse parties the opportunity to cross-examine Rothstein on such testimony,

final judgment, and, as such, d[o] not call into play the timing and tolling considerations attendant upon motions to alter or amend judgment under Fed. R. Civ. P. 59(e)." *Wagoner v. Wagoner*, 938 F.2d 1120, 1122 n. 1 (10th Cir.1991); *Bodine v. Federal Kemper Life Assurance Co.*, 912 F.2d 1373, 1376 (11th Cir. 1990) (holding that interlocutory orders are subject to revision at the discretion of the court).

"[A]ny order or other decision, however designated, that adjudicates fewer than all the claims [in an action] ... does not end the action as to any of the claims ... and may be revised at any time before the entry of a judgment adjudicating all the claims ..." Fed. R. Civ. P. 54(b); *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 12 (1983) (noting that "every order short of a final decree is subject to reopening at the discretion of the district judge"). Thus, "an interlocutory order is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties," *Grupo Televisa, S.A. v. Telemundo Communications Group, Inc.*, 2007 WL 4699017, at *1 (S.D. Fla. Oct. 12, 2007), and is not subject to the heightened requirements for reconsideration of a judgment. *See Bon Air Hotel v. Time*, 426 F.2d 858, 862 (5th Cir.1970) (An interlocutory order is "not subject to being vacated under Rule 60(b)"); *see also*, 12 Moore's Federal Practice, § 60.23 (June 2010 3d ed.) ("Rule 60(b) does not govern relief from interlocutory orders ..."). Other courts have adopted even more lenient standards for judging motions for reconsideration holding that such motions will be granted if the Court is convinced it made any error, manifest or not. *See, e.g., Vosdingh v. Qwest Dex., Inc.,* No. 03-4284, 2005 WL 1323007, *1 (D. Minn. June 2, 2005) ("this Court owes no deference to itself and knows it makes mistakes, motions to reconsider will be granted.")

As noted above, the February 13th Order did not address the Razorback Victims' request to participate in Rothstein's second deposition for purposes of its state court lawsuit against Ted

Morse and Morse Operations and did not consider due process considerations raised herein as to the ability of the insured companies to question Rothstein pertaining to a separate lawsuit (crime fraud policy of insurance) while denying the Razorback Victims the right to examine themselves or object as needed as to a witness that will not be available at trial.  Indeed, the Order invited the Razorback Victims' to "demonstrate a specific need" to participate in the second deposition and, based on the foregoing, the Razorback Victims believe this threshold to be well-satisfied.  In essence, the Razorback Victims are not asking the Court to reassess arguments already addressed; rather, as shown, reconsideration is appropriate to allow the Court to address these dispositive bases in the first instance.

**WHEREFORE**, the Razorback Victims request the Court to clarify or amend its ruling set forth in its Order dated February 13, 2012, and permit them to question Rothstein concerning the Morse lawsuit, and object to questions posed by the insurance companies and cross-examine Rothstein concerning the Banyon crime-fraud policies.

Dated:  March 12, 2012

Respectfully submitted,

/s/James D. Silver
WILLIAM R. SCHERER
Florida Bar No. 169454
wscherer@conradscherer.com
JAMES D. SILVER
Florida Bar No. 373702
jsilver@conradscherer.com
CONRAD & SCHERER, LLP
Counsel for Razorback Victims
633 South Federal Highway
Fort Lauderdale, FL 33301
Tel:  (954) 847-3324

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 12th day of March, 2012, I electronically filed the foregoing via the Court's electronic noticing system on all parties receiving service in this matter via CM/ECF.

                By:    s:/James D. Silver
                         Florida Bar No.: 373702
                         633 South Federal Highway
                         Fort Lauderdale, FL 33301
                         Tel:  (954) 847-3324
                         Fax: (954) 463-9244