```
 1                    UNITED STATES DISTRICT COURT
                      SOUTHERN DISTRICT OF FLORIDA
 2                       FT. LAUDERDALE DIVISION
 3                      Case 11-61338-CIV-COHN
 4
     IN RE:  ROTHSTEIN ROSENFELDT ADLER, P.A., DEBTOR
 5
 6   HERB STETTIN, TRUSTEE
 7
                                        FT. LAUDERDALE, FLORIDA
 8
                                        February 10, 2012
 9
10
     ------------------------------------------------------------
11
12
                      TRANSCRIPT OF MOTION HEARING
13              BEFORE THE HONORABLE JAMES I. COHN,
                    UNITED STATES DISTRICT JUDGE
14
     APPEARANCES:
15
     FOR THE TRUSTEE:      CHARLES LICHTMAN, ESQ.
16                         Berger Singerman
                           300 East Las Olas Boulevard
17                         Suite 1000
                           Ft. Lauderdale, Fl 33301
18                                   954-525-9900
19
     FOR THE GOVERNMENT:   LAWRENCE LaVECCHIO, A.U.S.A.
20                         United States Attorney's Office
                           500 East Broward Boulevard
21                         Ft. Lauderdale, Fl 33301
                                     954-356-7255
22
23   REPORTED BY:          PAULINE A. STIPES, RPR-CM
                           Official United States Court Reporter
24                         Federal Courthouse
                           299 E. Broward Boulevard
25                         Ft. Lauderdale, FL  33301
                                     954-769-5496
```

1         THE COURT:  Good morning, folks, this is In Re:
2  Rothstein Rosenfeldt Adler P.A..

3         Counsel, would you state your appearance.

4         MR. SCHMOOKLER:  Scott Schmookler on behalf of RLI
5  Columbia Casualty and Zurich.

6         THE COURT:  All right.

7         The Court has reviewed the submissions by various
8  parties and I guess we will start with the Trustee's proposal.

9         Please state appearance when you approach the podium.

10         MR. LICHTMAN:  Good morning, Chuck Lichtman for
11  Herbert Stettin Chapter 11 Trustee of Rothstein Rosenfeldt
12  Adler.

13         Before I address the merits of our Motion for Writ,
14  what I would first like to do is look the Court in the eye and
15  tell the Court on behalf of my colleagues that our counsel in
16  RRA and Mr. Stettin how humbly sorry we are with respect to the
17  issues that you had to deal with in December concerning the
18  Rothstein interview.

19         It is pointless to rehash what our thought processes
20  were or lack thereof, but I want the Court to know we do
21  apologize.  We do and did take it extremely seriously.

22         If it pleases the Court, what I would like to first
23  start off with is address the issue of service so the record is
24  clear on this.

25         Following the entry of this Court's order directing

1  expedited responses, docket entry 106, we served the order on
2  every party of record in that case, of record in the main RRA
3  case, so everybody on the matrix would have received it.  It
4  was served in this case, as well, and I think there were a
5  couple instances where we had knowledge of people who had not
6  appeared.  We served them also.  It is conceivable along the
7  way somebody didn't get one that would like to.  I can't
8  control whether or not everybody filed appearances in
9  respective actions.

10      We think we complied with that Court's directive.

11      I would like to start and discuss why we need this
12  second deposition, and I will start with a proffer that we made
13  to Judge Ray in court a few weeks ago.

14      We know that Ponzi schemes by nature are cases that go
15  on for an inordinate amount of time, hugely complicated, they
16  normally involved significant amounts of money and massive
17  pieces of litigation.  RRA is no different.  We have pending
18  123 adversary cases.  I think I reported in my papers to you it
19  was 112.  It was 122, not 112, and we added the case from the
20  time of the last filing where a tolling agreement expired.

21      The proffer we made to Judge Ray and make to this
22  Court and we take our charge very seriously, we wish to close
23  our cases in record time.

24      We aspire to reach the goal of having every adversary
25  completed by calendar -- close of calendar year 2012 to the

1  extent that we can, knowing that maybe someone will be on a
2  trial calendar shortly after that, and one exception, the TD
3  Bank case, so massive, we may not be able to control it easily.
4  We think a lot of this is in our control and we wish to do this
5  because it brings less cost to the State.

6        Following along these lines, we undertook to
7  understand what it was going to be for the Trustee to put
8  together 123 cases, and we realized Scott Rothstein's
9  deposition was essential in proving one of two things in the
10  case.  He had specific knowledge what we would address in the
11  Trustee's prima facie case and we knew he had direct knowledge
12  of facts that would contradict what is typically known in
13  Bankruptcy Court as the good faith on behalf of certain
14  defendants who might assert they are not subject to a
15  fraudulent conveyance because they acted in good faith in the
16  transaction.

17        So, focused on that, knowing after the first
18  deposition all we were able to accomplish, and it was
19  significant so the Court knows what is taking place, what was
20  called in my papers "Big Deposition", Trustee, Razorback
21  plaintiffs, Gibraltar Bank, TD Bank, U.S. Funds, Morse and
22  perhaps one or two other people we still hadn't had the
23  opportunity to address, putting together and focus on the
24  merits of our adversary cases which have substantial monetary
25  value to the estate.

1          I would tell the Court, I don't recall the exact
2   number.  I think it is in the neighborhood when we had to
3   estimate this for Judge Ray of $500,000,000.

4          These are real cases.  Admittedly, some are smaller
5   than others, and some very large in scope, some fairly simple,
6   and some extremely materially complex.

7          Bottom line was we need Scott's deposition so we can
8   build these cases.

9          We are extremely mindful of the Court's order
10  deferring ruling on motion to bifurcate.  That was docket entry
11  85, which we thought established a standard by the Court for
12  any party who wished to participate in the second deposition.
13  You said parties had to demonstrate a need for the depo, and
14  you added, "simply being sued by the Trustee in an adversary
15  action is not by itself sufficient cause."

16          We took that charge to be equally applicable to us.

17          We didn't think that we needed to take 123
18  depositions, and we didn't think if we came to you with a
19  straight face and said we should take 123 depositions that you
20  would take us seriously and you shouldn't have.

21          We worked very hard on a case by case analysis, a lot
22  of time spent to say where do we really need Scott's
23  deposition, what does he add, how can we billed our cases if he
24  testifies or otherwise provides facts to help the defense, and
25  that is how we come up with 29 cases.

1     The Court will recall it is the Trustee, not any
2  defendant in a case, not in this Court or Bankruptcy Court, it
3  was us that raised the due process issue.

4     We wanted to be sensitive to it. We certainly don't
5  want to embark down the path of putting together cases, finding
6  ourselves in a position where defendants claim lack of due
7  process. We go all the way through litigation and spend time,
8  estate money litigating to have an appellate issue that we
9  don't wish to deal with. We would much rather address that up
10  front.

11     So, just as we look at the case from the plaintiff's
12  prospective where Scott's testimony would be critical, we think
13  that, really, the same thing applies with regard to the
14  defendants, and I think that probably the most difficult aspect
15  of what the Court, whether it is Your Honor or Judge Ray, will
16  have to deal with is being sensitive to that delicate balance
17  of when a defendant should be entitled to depose Mr. Rothstein.

18     Honestly, Judge, we have these 20 odd cases. We have
19  10 days that we've asked for to take these depositions, and we
20  are being selfish, I know there are people that don't have an
21  interest in our adversary proceedings that wish to depose
22  Mr. Rothstein. I don't want to say I am insensitive to them
23  but, admittedly, I am being selfish, which is in this 10 day
24  period, not 10 day deposition, but 29 discreet depositions to
25  be taken over 10 days, that it is going to be very difficult,

1  very complex to get all of our testimony in in those 10 days.

2            That is my problem.

3            We are working through that.

4            I think you saw it in my papers as well, but I

5  repeatedly discussed the concept of protocol orders.

6            I am very pleased to advise the Court, if we were able

7  to get all of the parties before you last time that had

8  hundreds and hundreds of millions of dollars at stake to agree

9  to protocols to streamline the deposition and pertain to all

10  facets taking the deposition, use of the deposition, how the

11  testimony could be used, objections, matters like that, if we

12  were able to fashion protocol orders in the last go-around with

13  everything at stake there, I am confident that given more time,

14  and working with all counsel, and having the wisdom of Judge

15  Ray, as well, we would be able to accomplish that here and thus

16  we would be able to figure out a mechanism how to take those 29

17  depositions in the 10 day period.

18            I highlighted in my paper one instance as an example

19  for the Court.  We have the consumer goods cases.  Those are

20  cases where Mr. Rothstein took RRA funds and bought either a

21  car or jewelry.  We think as an example we could work with

22  counsel and reach a stipulation, instead of having seven

23  separate depositions, each that would have to begin and end

24  separately, and go through a lot of the same questions and

25  answers with Mr. Rothstein, we could put everybody in the room

1  together at the same time. The Trustee would be able to ask

2  his questions. The defendants could ask their questions.

3  There wouldn't be duplicative questions and that would save

4  maybe a day.

5          I know you say is a day material? When you have as

6  much to accomplish as we do, the day is material. There isn't

7  any reason why the transcript can't be used much as the case on

8  the first case, anybody could use the transcript for that

9  purpose.

10          So it is those type of things that we are looking for

11  to accomplish assuming the Court is gracious and gives us the

12  10 days to take the deposition.

13          I should point out that several of our cases we

14  identified are very complex.

15          THE COURT: Let me ask you this question.

16          MR. LICHTMAN: Yes.

17          THE COURT: As I understand it, there are now more

18  than 2900 pages of transcripts from Mr. Rothstein's 10 days of

19  being deposed.

20          MR. LICHTMAN: Yes.

21          THE COURT: To what extent can those transcripts be

22  used for impeachment purposes in all of these other cases?

23          MR. LICHTMAN: I was going to address that with the

24  Court.

25          Two separate occasions during the 10 day period I

1 asked Mr. Rothstein a series of questions to have him explain
2 why he was telling the truth.

3        I would say that most of the defendants, not all, one
4 defendant particular, Gibraltar Bank led by former Judge Mary
5 Barzee spent a significant amount of time impeaching or
6 attempting to impeach Mr. Rothstein.

7        I can't see a reason in the world why we couldn't
8 reach a stipulation, any of the questions, for instance, I
9 asked on behalf of the Trustee why Rothstein was telling the
10 truth or any question any defendant asked in that 10 days
11 shouldn't be used.

12        That is important.  If you assume we have 29 jury
13 trials, you would expect that every counsel would have to spend
14 time asking questions of Scott, why are you telling the truth,
15 Mr. Rothstein?  You did this and you did that, isn't that the
16 case?

17        We wish to avoid that.

18        One of the issues I was going to bring to the Court's
19 attention is reaching as part of the protocol a stipulation on
20 that very point.

21        THE COURT:  I am not talking about using these
22 transcripts as direct evidence in cases in which a litigant did
23 not participate in deposition one.  What I am talking about is
24 impeachment.

25        It can't be used as a prior inconsistent statement in

1  any litigation whether or not the party was present at the
2  deposition or not.

3          MR. LICHTMAN:   Conceivably, I suspect that everybody
4  would want to read the questions and answers, and if they were
5  present in the deposition, I would presume the same questions
6  and answers would be asked to Mr. Rothstein the second time
7  around.

8          I would take it a step further and submit the
9  transcript could be used, that he was the declarant and
10  unavailable for purpose at trial.

11          THE COURT:   I think there has got to be some mechanism
12  in place to prevent repetition.

13          MR. LICHTMAN:   Our concern --

14          THE COURT:   2900 pages is a lot of deposition
15  testimony.

16          MR. LICHTMAN:   Yes.   There is another point related
17  to that, judge.

18          THE COURT:   Go ahead.

19          MR. LICHTMAN:   Actually, two sub issues.

20          There are certain cases pending where some of that
21  testimony is relevant.  I think I highlighted that in my
22  motion.  Such as, the Spinosa and the Regent cases, and there
23  might be a couple others.  I think the insurors are similarly
24  situated although we don't view them as being part of what we
25  have going because they don't have any pending adversary

1 actions, and I think their cases may be in the State.  That is
2 a separate part.

3        There ought to be instances if it is in the record
4 already it should be used so we can save time and be efficient.

5        Most of the adversaries have discreet and separate
6 sets of facts so the testimony taken in the "Big Depositon"
7 won't be useful for the adversary cases.

8        THE COURT:  Okay.

9        MR. LICHTMAN:  What I want to tell the Court, it was
10 a fair amount of work having protocol orders.  You addressed
11 some of the concerns the Court has.  We thought about those as
12 well.

13        I am confident should the Court grant the opportunity
14 for the deposition, we would be able to reach protocol orders,
15 and streamline the process and have the transcript from the
16 first deposition and the second deposition, and get everybody
17 what they need.

18        That leads me to the methodology of the deposition.

19        The Court ruled once before on videotaping the
20 deposition, and having sat through Mr. Rothstein's deposition,
21 yes, I would love to have it videotaped, but the Court ruled on
22 that.  I don't see a point in revisiting it.  The Trustee is
23 satisfied everybody situated taking it by video conference
24 would work, and I believe there is a workable procedure so we
25 could get documents to Mr. Rothstein.  He would get the

1 documents and flip them. I don't know if Mr. Nurik would be
2 with us in the room or where Mr. Rothstein is, but Mr. Nurik
3 would help in finding the documents.

4           Those are very minor concerns and all workable.

5           What that leads up to now is the respondents that
6 filed submissions with Your Honor, and what the views are of
7 the various respondents most of whom are defendants. I think
8 every responding party claimed lack of due process, all,
9 however, in conclusary terms. They put the headline out there,
10 they will be deprived due process if they don't get to take the
11 deposition.

12           I am concerned about that because none of them
13 demonstrated a need and why they need to depose Mr. Rothstein.
14 I am not asking for disclosure of tons of work product but they
15 have to justify it.

16           I know that is your call.

17           That is why I broke down the group of respondents into
18 categories so the Court could understand who had a more
19 legitimate claim to due process issue than others.

20           THE COURT: Do you have a figure as to the number of
21 parties who did not participate in questioning Mr. Rothstein in
22 deposition one?

23           MR. LICHTMAN: In my 29 depositions?

24           THE COURT: I am not just talking about adversary.

25           MR. LICHTMAN: Most did not participate.

```
 1              THE COURT:  How many parties are we talking about all
 2  together?
 3              MR. LICHTMAN:  Parties that were not present in the
 4  deposition?
 5              THE COURT:  Did not participate in questioning.
 6              MR. LICHTMAN:  It would be virtually every adversary
 7  defendant that we seek to depose, almost every single one
 8  excepting the Spinosa group, the New York funds and Razorback
 9  to the best of my recollection.
10              THE COURT:  Okay.
11              MR. LICHTMAN:  Would the Court like me to address and
12  walk you through the different groupings that I discussed in my
13  brief?
14              THE COURT:  That won't be necessary.
15              MR. LICHTMAN:  Okay.  Are there any other questions
16  that I could answer?
17              THE COURT:  Not at this time.
18              Mr. LaVecchio, do you wish to be heard?
19              MR. LaVECCHIO:  Please, judge.
20              It was our intention to object to any second round of
21  depositions in this case.  While the depositions were taking
22  place in Miami, I was telling parties, we are going to object
23  to this being done again.
24              After speaking with Mr. Lichtman and other parties, I
25  became convinced there are certain due process implications
```

1 | inherent that would necessitate some of the parties having some
2 | access to the witness.

3 | This stage of my career, I try not to fight losing
4 | battles. That is why the Government acceded to some limited
5 | depositions.

6 | Clearly, you have the power to limit the amount of
7 | time that is consumed in taking these depositions. Clearly,
8 | you have the power to order that the depositions be taken
9 | remotely.

10 | As far as the time is concerned, having sat through
11 | all but two days of the depositions that took place before, and
12 | I read the transcripts of the two I wasn't there for, I don't
13 | see there are a lot of questions left unasked regarding the
14 | Ponzi scheme.

15 | Now, against certain claims of the Trustee making
16 | against certain individuals and certain financial transactions,
17 | yeah, there might be some number of those that need to be
18 | taken.

19 | Under the circumstances, with the transcript that has
20 | already been created, I think 10 days is more than sufficient.
21 | I think 10 days is more than generous under the circumstances.

22 | To that extent the less the better, as far as the
23 | Government is concerned, 10 is the maximum the Court should
24 | allow.

25 | THE COURT: So the Government is not opposed to 10

1  days?

2        MR. LaVECCHIO:  We can live with 10 days.

3        THE COURT:  Okay.

4        MR. LaVECCHIO:  The issue here, one thing I have to

5  take issue with is the Trustee in his reply says on page seven,

6  since security precautions are now virtually non-existent, and

7  speaks to maybe multiple depositions, maybe the Court allowing

8  other depositions, I am not faulting Mr. Lichtman on this, he

9  doesn't know this, he has no reason to know it.  In fact, even

10 by video, there are significant security issues that have to be

11 addressed by U.S. Marshal Service and Bureau of Prisons I am

12 not free to divulge publicly but I am willing to do it in

13 camera if you so wish.

14       This is a large undertaking by the marshals to require

15 significant financial and manpower resources.  I am happy to

16 share with the Court orally or written as long as it is in

17 camera.

18       Do you have any questions?

19       THE COURT:  No.

20       Is there any party present who objects to the taking

21 of a second deposition of Mr. Rothstein?

22       All right.  There being no objections, the Court --

23       I am going to do this piece meal.

24       The Court finds a demonstrated need for a second

25 deposition of Mr. Rothstein.

1       Now, is there any party present who objects to 10
2  business days for the taking of Mr. Rothstein's second
3  deposition?

4       If you object, please come forward to the podium,
5  state your appearance and I will hear your objection.

6       MR. ACKERMAN:  Joseph Ackerman for Jeffrey Epstein.

7       We don't really object to the 10 days, per se.  Our
8  problem is the Trustee's position is he needs every minute of
9  the 10 days for adversary proceedings.

10       We have a case, the RRA lawfirm was using cases
11  against Mr. Epstein to advance a Ponzi scheme.  We have a civil
12  litigation against Mr. Rothstein in Circuit Court, one of his
13  partners involving those allegations with significant damage
14  claims both ways.

15       Because the Razorback claims are similar, that is,
16  Mr. Rothstein took the cases being litigated by Mr. Edwards,
17  showed the files to the Razorback defendants for the purpose of
18  getting that investment, we are linked in that respect to the
19  facts.

20       We have gone to the Trustee to get documents, although
21  we are not in the Bankruptcy proceeding, and made sense from a
22  judicial economy standpoint, for lack of a better word,
23  hitchhike or tag-along for the issues of security issues,
24  economy issues, our paying cost, some of prorata share of the
25  costs involved.

1        We need about four to five hours of a deposition,
2   perhaps less, but we would like to be part of the second round
3   deposition.

4        Our case has been pending since 2009.

5        The Circuit Court has deferred ruling on some motions
6   until we could get a clearer picture whether we would be able
7   to depose him.  We filed our own Motion for Writ.  From a
8   judicial economy stand point it makes sense, there are
9   relationship connections to what is already testified.  We
10  would like to be part of this and not meant to be repetitious.
11  Mr. Lichtman's position is he needs every bit of it for the
12  adversary.  We are not questioning that and we would like to be
13  part of this round.

14       To that extent, we may need another day or some
15  consideration in that respect.

16       THE COURT:  Or if you are included in those 10 days?

17       MR. ACKERMAN:  Or included in the 10 days.

18       MR. SCHMOOKLER:  Your Honor, this is Scott Schmookler,
19  I represent three insurors, and my clients fall into the
20  category as the prior counsel.  It is suggested by the Trustee
21  that we be excluded from the 10 days.  We need to be able to
22  depose Mr. Rothstein at some point because his conduct forms
23  the basis of a $70,000,000 insurance claim.

24       THE COURT:  Who do you represent?

25       MR. SCHMOOKLER:  I represent Columbia Casualty

1 Company, RLI Insurance Company and Zurich America Insurance
2 Company.

3          THE COURT: Who are the insureds?

4          MR. SCHMOOKLER: Banyon is our insured.

5          THE COURT: All right. Thank you Mr. Schmookler.

6          MR. HOFRICHTER: Alex Hofrichter, I represent one of
7 the seven insurors involved in several pieces of litigation,
8 one involving Razorback and one of the Banyons. And the seven
9 insurors collectively have asked for 10 hours of deposition,
10 about a day and a half of deposition. We don't have any
11 problem with the two weeks as long as we are included.

12          There is an eighth insurer, Union Charters, a million
13 dollar policy on top of the 70,000,000. They asked to join us
14 with litigation pending in the Middle District.

15          We have asked 10 hours for seven insurors which I
16 don't think is unreasonable. If that works with everybody
17 else, we don't object to the 10 days, but we would like to be
18 included in the second deposition.

19          THE COURT: Thank you, sir.

20          MR. HOFRICHTER: Thank you.

21          MR. BLACK: James A. Black, Jr. represents St. Paul
22 Fire and Marine Company. For the sake of brevity, St. Paul
23 joins in the Federal's position.

24          THE COURT: Yes, sir.

25          MR. KEENE: Bruce Keene on behalf of National Union.

1   We were not part of the original seven company group.  We did

2   not file our action before the Bankruptcy.  We ask for

3   additional time, maybe an hour and a half.

4            MR. SILVER:  Good morning, Jim Silver on behalf of

5   Conrad and Scherer on behalf of Razorback Funding.  We are here

6   on different issues and parties.  Razorback is a joint loss

7   payee.  While we are not seeking to participate with regard to

8   the insurance issues, if Your Honor grants the request for the

9   insurance companies to participate, we would want to

10  participate as well.  We are a plaintiff against the insurance

11  companies on the same policy.

12           Thank you.

13           THE COURT:  Your lawfirm has had the opportunity to

14  depose Mr. Rothstein, correct?

15           MR. SILVER:  Your Honor, we deposed him for purposes

16  of a State litigation against TD Bank, Gibraltar and others.

17  Our litigation by the insurance company is stayed by the

18  District Court.

19           We are not asking to take a deposition regarding the

20  insurance policy.  All we are asking, if our adversaries are

21  permitted to ask those questions, we be permitted to

22  participate.

23           THE COURT:  Thank you, sir.

24           MR. SILVER:  Thank you, Your Honor.

25           MR. JOSEPH:  Good morning, Allan Joseph on behalf of

1  Brauser, defendants in a $4,000,000 adversary action. We have
2  no objection to what the Trustee is asking for. We would like
3  to participate on the limited issues concerning our clients'
4  cases, one of the cases that the Trustee is seeking to inquire
5  of Mr. Rothstein; number two, we ask procedures be put in place
6  so my client would not have to fund for the entire 10 days. We
7  only need to be there for the time he is going to be examining
8  on those particular issues.

9          THE COURT: All right. Thank you, sir.

10         MR. FERCOSO: Robert Fercoso. I am with Shutts &
11  Bowen. Shutts & Bowen represents all but one of the defendants
12  in Regents, an adversary. I will address the limited question
13  you ask about the 10 days, not the 10 days, per se, that is
14  objectionable. What is not susceptible to understanding right
15  now how much individual cases are going to be allowed, counsel
16  for individual cases are going to be allowed to conduct the
17  deposition.

18         I am not suggesting I want to go for 10 days. We did
19  say we have been sued for $18,000,000. I heard discussion
20  Regions is really the hedge funds. That is not the case. I
21  can talk about that more later, but the defendants are
22  different, different adversary proceedings, different counsel;
23  and, so, your Honor, we don't agree with that characterization,
24  bottom line is, what we said in our papers, we believe we are
25  entitled having been sued for $18,000,000 a full and fair

1 opportunity to depose Mr. Rothstein, at least seven hours
2 contemplated by the rules.

3          THE COURT: Thank you, sir.

4          MR. SHAWDE: Thank you. Jack Shawde, Rasco Klock. We
5 represent what I refer to as the Preve defendants in two
6 proceedings. One we are defenders along with Mr. Fercoso's
7 client who you just heard from. We agree with what Mr. Fercoso
8 said. We were not allowed to participate in the first round of
9 depositions, number one; number two, we don't see as a
10 practical matter how we can address the substantive issues in
11 our case, particularly our defenses, in less than a full day
12 and, therefore, for that reason, just as Mr. Fercoso said, we
13 don't see how 10 days could be an appropriate limitation unless
14 the Trustee wants to shorten the time of the other adversary
15 proceedings.

16          THE COURT: Let me ask you this: You will be able to
17 use the 2900 pages of transcripts currently in existence, won't
18 you?

19          MR. SHAWDE: We may be able to use it as impeachment.
20 The issue is, would we want to use it as impeachment? And that
21 brings me to a second issue, and that is videotaping. It is
22 our position that videotape is critical in order for a jury
23 trial which we will have in the District Court in order for the
24 jury to adequately assess the credibility, demeanor of
25 Mr. Rothstein, the truthfulness of his testimony which the

1  Trustee says is necessary for the Trustee's case.

2          Remember, Your Honor, we are not the ones who are here

3  asking for this deposition.

4  .        We are defendants in an adversary proceeding.  The

5  Trustee claims Mr. Rothstein's deposition is necessary for the

6  Trustee to prove his case.

7          So, if they don't depose Mr. Rothstein, we would be

8  perfectly happy with that.

9          Because the Trustee is asking for it, we are saying,

10  if it is going to happen, A, it needs to be videotaped because

11  it is a jury trial; and, if the Trustee is saying

12  Mr. Rothstein, who we all know is sitting in jail, based on his

13  previous lies, if the Trustee is going to float his boat with

14  Mr. Rothstein as the captain, this jury needs to see and judge

15  the demeanor, candor, credibility of this witness.

16          The key witness according to the Trustee.

17          The only way that could be done is videotaping,

18  because we were not allowed to participate in the first

19  go-around; and, because the first go-around is not videotaped,

20  the second go-around needs to be a full proceeding and

21  videotape.  We can't take snipits from the first go-around

22  because they weren't videotaped.  For that reason, we object to

23  the 10 day limitation.

24          THE COURT:  All right.

25          Mr. McIntosh.

1    MR. McINTOSH:  Good morning, Your Honor.

2    THE COURT:  Good morning.

3    MR. McINTOSH:  I represent Ironshore Indemnity, one of

4    the insurance companies in the $70,000,000.

5    We do require time to depose Mr. Rothstein.

6    Mr. Lichtman suggested since our insured participated

7    in taking his deposition the first time, it is not necessary

8    for us to take the deposition.  I think he overlooks the fact

9    that we filed an action for recision based on certain actions

10   of our insured.

11   So, it is critical that we have the right to depose

12   Mr. Rothstein.

13   I gather you are going to discuss at a later moment

14   the timing of the second deposition, but we would ask the Court

15   to consider the fact that the insurors have been frozen out of

16   any material in this case because the cases have been stayed

17   and we have been stonewalled when we ask for copies of the

18   emails which everyone else has had access to.

19   So, we need time to review the emails before we take

20   Mr. Rothstein's deposition.

21   THE COURT:  The contemplated date was June 4, 2012.

22   MR. McINTOSH:  Your Honor, if we were given the

23   materials which we have asked for prior to that, 30 days prior

24   to that, then I think that would be fine from my standpoint.  I

25   haven't discussed it with my counsel brother insurors.

1          THE COURT:  Thank you.

2          MR. McINTOSH:  Thank you.

3          MR. NORRIS:  Timothy Norris, Duane Norris.  We

4   represent Ballamor Capital Management, Inc., Ballamor and Barry

5   Bekkedam in one of the Trustee's adversary proceedings.

6   Regents pointed out they were sued for $18,000,000, and seven

7   hours contemplated by the rules.  We have been sued for all the

8   losses of all the investors in the Trustee's prayer for relief

9   in his count for aiding and abetting breaches by Mr. Rothstein

10  of his fiduciary duties to the lawfirm.

11         Your Honor, we don't object to any particular number

12  of days.  We simply want to make it clear that we need time to

13  depose Mr. Rothstein.

14         The plaintiff's complaint, as we mentioned in our

15  objection, uses very conclusary statements about Mr. Rothstein

16  and our client Mr. Bekkedam, how they had a close relationship

17  of confidence, but no facts are alleged.

18         Likewise, a payment was supposedly made by the

19  Rothstein firm to my client, quote, through one of the Banyon

20  entities.  How that was done, again, it was not pleaded.

21         We also feel based upon we understand some of the

22  testimony in the 2900 pages is that we will have an affirmative

23  defense of imperii delicto for the count of aiding and

24  abetting.  We haven't gotten to that stage yet.  Our motion to

25  dismiss is still under advisement.  We will need to take

1  Mr. Rothstein's testimony in support of that affirmative
2  defense and possibly others.
3       We feel that we really do need the presumptive seven
4  hours that Rule 30 provides.
5       Again, split with the Trustee.
6       We are talking about a full day of deposition.
7       We think we need it.
8       If, of course, between now and then, Judge Ray were to
9  dismiss some of the counts for lack of sufficient pleading,
10 that would make our life much simpler.
11      Right now, we simply do not feel that we can live with
12 an hour and three-quarters time which is what is suggested in
13 the Trustee's reply.
14      So, Your Honor, we would also like to make the same
15 point that Mr. Shawde made on behalf of the Preve defendants,
16 but, also, nothing more to reiterate.
17           THE COURT:  Thank you, Mr. Norris.
18           MR. NORRIS:  Thank you.
19           THE COURT:  Any other objectors to the Trustee's
20 proposal of 10 days?
21      10 days for the taking of a second deposition.
22      Now, there must be reasonable limitations.
23      Everybody can't have seven hours to depose
24 Mr. Rothstein.
25      I think that in light of the fact that we've got 2900

1  pages of deposition transcript available now, that 10 days of
2  additional deposition time is reasonable.

3       In fact, it may be overly reasonable, especially in
4  light of the fact that the Government cited regarding Katrina
5  where only eight days were allotted in a similar situation.

6       So, the Court will allot 10 business days for the
7  second deposition.

8       The deposition will commence on June 4, 2012, and
9  continue for nine consecutive business days, concluding on June
10  15, 2012.

11      All right.  Now, the next issue pertains to how the
12  deposition will be facilitated.

13      The Government and the Trustee jointly recommend video
14  conferencing and there are objections to that.

15      I have read all of the objections that have been
16  filed.

17      I know what the position of the objectors is, but, if
18  anyone wishes to be heard further, I will hear from you at this
19  time.

20      Mr. Josefsberg, good morning, sir.

21      MR. JOSEFSBERG:  Good morning, Your Honor, how are
22  you?

23      THE COURT:  Good, thank you.  Yourself?

24      MR. JOSEFSBERG:  Great.  I want to join with the
25  Trustee and ask it not be a video.

| | |
|---|---|
| 1 | THE COURT: Not videotape? |
| 2 | MR. JOSEFSBERG: I will get to that in a second. I |
| 3 | said video. I am going to lead into that. |
| 4 | My concern is you could order that Mr. Rothstein be |
| 5 | deposed in person but, from what I understand from the last |
| 6 | time, you cannot tell the Marshal Service where he shall be. |
| 7 | The last time the Marshal Service truly accommodated |
| 8 | you, and I know Mr. LaVecchio helped. They made it here and it |
| 9 | was wonderful. |
| 10 | If we were to push and have it in person, we could end |
| 11 | up, not out of spite of the Marshal's Office but for security |
| 12 | reasons, in Wyoming or Oregon, two flights and three hour drive |
| 13 | and that would be devastating. That would be a waste of |
| 14 | hundreds of thousands of dollars. Since I can't be assured it |
| 15 | would be Miami, Fort Lauderdale, I prefer it being video. |
| 16 | I agree with them. |
| 17 | May I lead into the next question that you already |
| 18 | anticipated? |
| 19 | THE COURT: Yes, sir, you may. |
| 20 | MR. JOSEFSBERG: While it is being videoed, I know you |
| 21 | ruled on this once, but I would like you to revisit it, I think |
| 22 | it is imperative that it be taped. |
| 23 | Now, as far as repetition is concerned, none of us |
| 24 | will be repetitive. Your Honor, none of us will be repetitive, |
| 25 | none of us will be repetitive. I promise you that. |

1            As far as the 2900 pages, I know Mr. Lichtman is smart
2  enough, and he is going to start the proceeding by saying,
3  Mr. Rothstein, have you read the 2900 pages from your prior
4  depo?

5            Is everything in there true and correct, and if I ask
6  you the same questions, would your answers be the same?  Yes,
7  yes.

8            2900 pages is in.

9            That is covered.

10           So, as far as that is concerned, but the reason I want
11  it taped, and the reason I drove two hours in the rain here
12  today instead of giving you a written submission or being on
13  the telephone is because I wanted to watch you, and I wanted
14  you to see me, and I know Mr. LaVecchio made his powerful
15  presentation, when you read a transcript it will only be half
16  of it.  His animated presentation is only part of the sell.

17           The other part is due to an incident that happened
18  awhile back.

19           Mr. Lichtman wanted to apologize to you, and did you
20  hear what he said to start this proceeding, Your Honor, I
21  wanted to look you in the eye.  He wasn't satisfied with a
22  letter or pleading apologizing.  He wanted you to see his
23  sincerity while apologizing for that.

24           Your Honor, it is so important that we look at each
25  other and the jurors look at Mr. Rothstein.

1  Would Mr. Lichtman be willing in these adversary
2  proceedings to have his closing argument typed up as a
3  transcript and submitted to the jury instead of standing in
4  front of them and advocating?

5  We have 100 reasons for wanting a jury to see
6  Mr. Rothstein.

7  Some say, you know, he is skirmming, and it is obvious
8  he is lying.  I have another avenue, if he is very smooth and
9  persuasive.  That proves a point for my client, how smooth and
10  pervasive Mr. Rothstein is.

11  Whatever the reasons, it is imperative that we see
12  him.

13  Now, security, I have the greatest respect for the
14  Marshal's Protective Service, not just Mr. Rothstein, but five
15  and 10 years from now when some good citizen wants to come
16  forward and testify against some unsavory people, I want the
17  Government to be able to tell them we have a Marshal Protective
18  Service in the works, so I don't want to see any mishaps in
19  this case.

20  We can do this in a fashion when it is being videoed.
21  I don't want to have a video of Mr. Rothstein in my office or
22  home.  I don't want to be watching him.  Let there be a tape
23  held by the Court, by the Government, to be used only when
24  there is a jury trial; and during the jury trial just put on
25  the screens showing it to the jury.  Don't let the public or

1  the press look at it or ban them from that part of the

2  proceeding.

3         Once we are videoing it, which they want, it doesn't

4  hurt to tape it, and for a jury to see the gentleman who is a

5  critical witness to believe him or to disbelieve him.

6         So, Your Honor, my point is, I would like it videoed.

7  I want to make sure that Mr. Rothstein's security is upheld,

8  but I don't think taping it and showing it to a jury under

9  those circumstances will in any way compromise his security.

10  It can be done easily.

11         And I am done.

12         I thank you for listening to me and I thank you for

13  watching me.

14         The truth is I am actually watching Pauline more than

15  I am you, Your Honor.

16         THE COURT:  That is another story.

17         MR. JOSEPHS:  I have my priorities.  And it was worth

18  a trip.

19         THE COURT:  Thank you.

20         Mr. Lichtman.

21         MR. LICHTMAN:  Judge, thank you for agreeing to grant

22  the relief.

23         It is much appreciated.

24         If I could focus on a few issues with respect to the

25  timing.

 1           First off, I think counsel for Brauser commented on

 2 the issue about their participation.  It is inherent in the

 3 process, and it was pointed out in my brief, if we have X

 4 amount of time, they have X amount of time.  There are no

 5 instances that occurred in the last go-around where we did

 6 anything except allocate to the minute that the defendant had

 7 the same amount of time as the Trustee.  That ought not be a

 8 concern.

 9           THE COURT:  Let me ask this question:  In the first

10 deposition, did you work seven hour days?

11           MR. LICHTMAN:  We start -- Yes, yes.

12           THE COURT:  All right.  So you took approximately

13 seventy hours of testimony?

14           MR. LICHTMAN:  I am working it through in my mind.  We

15 started close to 8:30, broke for lunch around noon, one,

16 sometimes two breaks in the morning, a full hour for lunch, and

17 went until five o'clock every day and usually had one and

18 sometimes two breaks in the afternoon, as well.

19           It came out to about seven and a half hours.  That is

20 why I came up with an hour and 45 minute allocation, roughly.

21           THE COURT:  Okay.

22           MR. LICHTMAN:  There is another issue I want to

23 address.  I don't want the Court to come away with the

24 impression that the time spent in the first deposition is all

25 relevant to these adversary cases.

1      In some of them, the ones I delineated before, there
2  absolutely is, there would be a lot of useable testimony.

3      For the most part, we were talking about TD Bank and
4  Gibraltar, the Funds and Morses.  None of that has remote
5  connection to the other adversaries.  I will call it 26 of
6  these adversaries.  I want the Court to be aware of that.

7      That is why I highlighted in my response the issues we
8  faced in the Levinson and Pearson matters.

9      I will give you another example, on David Boden's
10  case, Boden was general counsel for RRA.  We have file cabinets
11  full of documents that pertain to Boden, smallest amount are
12  topics that are encompassed in the first deposition,
13  transactions he was involved in, things he orchestrated,
14  subject, Ponzi with Pearson.

15      I don't want -- I want the Court to know we were
16  extremely concerned.  And that is why we are concerned because
17  the insurors want 12 hours now, and you heard Mr. Silver stand
18  up and Razorback wanted to participate.

19      I guarantee other parties that aren't here today and
20  feel they have an interest in the Razorback insurance policy,
21  they want to participate.

22      That is why I put in 10 hours, which is 12 hours, is
23  turned into three full days.

24      I am hugely concerned about the prejudice the Court
25  would have when the Court says the insuror's time comes out of

1 our time. The same thing with Epstein. I am aware -- Epstein

2 is the only one who has a motion for a writ before the Court;

3 but, at the same time, that is why I was indicating previously

4 my desire to be a little bit selfish to make sure I can do what

5 I have to in my cases working very, very hard, and we did it.

6 That is the point I raised on the Pearson thing. I

7 had hundreds of exhibits, and I figured out here is the 30 I

8 need to get, and I took every minute and didn't get in a bunch

9 more.

10 I am asking pretty please if the Court has to give the

11 insurors time or Epstein time, or any third party time, not on

12 my time.

13 MR. STICHTER: Scott Stichter, appearing on behalf of

14 Robert Furr.

15 Scott Stichter on behalf of Robert Furr who was

16 appointed as Trustee in the Banyon 32 case, and Banyon Fund

17 case.

18 On the insurors, those cases were stayed because of

19 Banyon Bankruptcy filings. These would be for advancing claims

20 in the Rothstein case but independent litigation regarding the

21 Banyon Trustee.

22 I didn't know the appropriate time to raise issues

23 regarding that, but we have -- Chapter 7 Trustee has additional

24 concerns in this case. We are taking depositions with trying

25 to rescind the insurance policy issue in favor of Banyon. That

1  is just another consideration with respect to the insurance.

2          THE COURT:  Thank you, sir.

3          Mr. Silver.

4          MR. SILVER:  Yes, Your Honor.  I rise to make sure

5  certain things don't slip between the cracks because we have a

6  lot of different litigation filed at different points in time.

7          I didn't rise to object to the 10 days.  I agree if we

8  work efficiently it can get done within the 10 days, however,

9  we did have two separate issues.  We represent six defendants

10  which are part of the Razorback victims group and adversaries

11  filed late last year, and those adversaries were not the

12  subject of Mr. Rothstein's deposition.

13          There are common issues relating to imperii delicto,

14  equitable estoppel, and property of the estate issues that we

15  believe we can handle efficiently and coordinate with other

16  counsel to limit the amount of time required, but these are

17  important for the defenses of our six separate clients sued by

18  the Trustee in adversary proceedings for, essentially,

19  Bankruptcy claw back, and some of them have been used for usury

20  which brings into play imperii delicto and equitable estoppel.

21          Secondly, the Razorback victims defined in our

22  response filed litigation against Morse Operations and Ed

23  Morse.  That suit was not filed until December 13th after this

24  was already begun.

25          We were in an attempt to resolve it with the Morris

1 parties and were unsuccessful and had to go forward with the
2 litigation.

3      We have no problem if there is stipulation or
4 understanding relying on the first deposition for all those
5 questions and limiting the second deposition relating to Morse
6 only to any additional questions that had not been already
7 asked.

8      Again, we think this can be done efficiently,
9 consistent with due process and in a way where we don't end up
10 with all types of parties that were victimized by this Ponzi
11 scheme going to State Courts, Bankruptcy Courts, District
12 Courts, with numerous depositions creating logistical concerns,
13 security concerns and efficiency concerns.

14      We request the Court permit our participation in an
15 efficient way.

16      Thank you for your time.

17      THE COURT:  Let me make it clear, this Court does not
18 have authority to make any evidentiary rulings with respect to
19 any other lawsuit.

20      So, whether or not something can be used as direct
21 substantive evidence or impeachment, that is going to be for
22 another judge to determine.

23      What I am here for is to determine the taking of a
24 second discovery deposition of Mr. Rothstein and the
25 limitations placed on that deposition.

1           All right.  Anybody -- Anybody else wish to be heard?

2           MR. LICHTMAN:  I think that last point was hugely

3  relevant.

4           And that is because, if the Court recalls, and I think

5  what I am hearing is right, you have jurisdiction over Scott

6  Rothstein, the person.

7           THE COURT:  He is under a criminal sentence imposed by

8  this Court.

9           MR. LICHTMAN: Right.  So, Your Honor's ruling today

10  will focus on producing him pursuant to our request for the

11  writ and the conditions of the testimony.

12           I think everything else that we have probably

13  discussed today is good background for you in order to help you

14  decide the length of days, but I suspect that what it really

15  does is bounce back now to Judge Ray consistent with the

16  protocol orders we entered before.

17           THE COURT:  Yes, sir.

18           MR. LICHTMAN: I don't think I need to respond to

19  Mr. Silver's comments with respect to Razorback.

20           THE COURT:  Yes, sir.

21           The deposition will be facilitated by the use of video

22  conferencing with Mr. Rothstein located at a facility

23  designated by the Bureau of Prisons.

24           The Court, albeit Mr. Josefsberg has always made a

25  very compelling argument, the Court finds that the security

 1  concerns addressed in a sealed document filed by the Government
 2  establishes good cause for not videotaping that testimony.
 3          So the request will be respectfully denied.
 4          I am going to leave the parceling out of time to Judge
 5  Ray to make that determination.
 6          This Court is simply ordering that Mr. Rothstein be
 7  made available for deposition for 10 days commencing June 4,
 8  2012, under the conditions set forth by the Court.
 9          MR. ACKERMAN:  Your Honor, may I approach?
10          THE COURT:  You may.
11          MR. ACKERMAN:  Joseph Ackerman representing Jeffrey
12  Epstein.  We have no problem participating in the parceling out
13  of the time by Judge Ray.
14          Mr. Lichtman is taking a position because our client
15  is not in an adversary proceeding and in a past hearing Judge
16  Ray expressed concern whether he has jurisdiction over that
17  issue as relates to us.  I would ask, we are willing to do it,
18  but I would like the Court perhaps to grant our motion and
19  allow us to participate, because I think that is the best use
20  of judicial economy, but I am concerned about being left out
21  because the Trustees take the position because we are not a
22  party in the Bankruptcy proceeding that we can't participate
23  and ultimately may be left out.
24          I would like to bring that to the Court's attention so
25  we don't get lost in the cracks.

1        We are willing to abide by that.  Judge Ray has

2   jurisdiction over the Trustee as relates to documents that we

3   have sought, but that is an issue that I need to bring to the

4   Court's attention.

5        THE COURT:  Thank you, sir.

6        Before I hear from you, sir, since Mr. Epstein does

7   have a motion before this Court, what is the Government's

8   position with respect to Mr. Epstein's counsel participating in

9   the discovery deposition?

10       MR. LaVECCHIO:  The Court clearly has authority to

11  issue the writ in accordance with his request, however, as we

12  previously cited to the Court in litigation ancillary to this,

13  the better practice has always been in a strictly State

14  proceeding for the State Court Judge to issue the writ and it

15  is forwarded to the marshals, and then the marshals have their

16  own way of dealing with these things.

17       We are in a position where the Court can deny relief

18  and the State Court Judge will issue his writ, and we will see

19  how it gets dealt with the Prison Service, U.S. Marshal Service

20  or you can issue a writ.

21       It is within the discretion of the Court.  The better

22  practice, because this is a State matter, that the State Court

23  Judge deal with it.

24       THE COURT:  Thank you.

25       MR. ACKERMAN:  We have tried that.  We went before the

1  judge.  He felt he did not have the jurisdiction nor could he

2  compel the Bureau of Prisons to produce Mr. Rothstein.

3         That is why we are before the Court because we believe

4  you have the jurisdiction.  Judge Crow said he entered the

5  order subject to what this Court and Bureau of Prisons would

6  do.  We attempted to go through that process.  Because he was

7  in a protection program, we were unsuccessful that way.  That

8  is why we are before the Court, and believe because our facts

9  are tied somewhat to the Ponzi scheme, it makes sense to do

10 this from a security standpoint and time standpoint in one

11 proceeding.

12        In the Government's response they filed nothing

13 objecting to our writ.

14        THE COURT:  All right.

15        Mr. Lichtman.

16        MR. LICHTMAN:  I fear where this might be headed is

17 should the Court grant the Epstein writ, that you will have 25

18 other motions for writ on your desk tomorrow.

19        THE COURT:  I suspect you are right.

20        MR. LICHTMAN:  I note with respect to the underlying

21 issue which the Court said, and this is showing of cause, that

22 nobody including the Epstein filing, which is docket entry 120,

23 established sufficient cause.  They may want to take his

24 deposition.  Everybody loves the opportunity to talk to

25 Mr. Rothstein, but I don't understand why they need that

 1  testimony, and I don't think that has been proffered to you
 2  except in the most general terms that we are going to be
 3  deprived due process.  That is the concern I have with respect
 4  to everybody.
 5          Thank you.
 6          MR. SILVER:  Your Honor, if I may speak to the State
 7  writ.  I have researched that extensively.  There are CFR's on
 8  point; however, it would be discretionary with the Marshal
 9  Service whether the marshals would produce Mr. Rothstein with a
10  State Writ.  There is a case out of California the State Court
11  Judge issued the writ to allow that party to be able to have a
12  compelled body of a criminal defendant to take that deposition.
13          Thank you, Your Honor.
14          MR. LaVECCHIO:  That is what I said, the State Court
15  could issue its writ and dealt with by the CFR and Marshal's
16  Service and Bureau of Prisons.
17          I read that same case out of California.  You do have
18  authority should you choose to exercise your discretion.
19          MR. ACKERMAN:  I apologize again.
20          THE COURT:  That is okay.
21          MR. ACKERMAN:  I don't know if the Court needs to
22  hear, I believe in our papers we established good cause.  He is
23  a defendant in the case.  There are cross claims back --
24  counterclaims back and forth between Mr. Edwards and Jeffrey
25  Epstein.

1           In essence, what happened was, the case
2  Mr. Rothstein's firm was bringing against Mr. Epstein was used
3  by that firm to advance the Ponzi scheme with regard to the
4  investors.

5           We attached our complaint, the Razorback investors,
6  which is why I said before I believe it makes sense to be part
7  of this proceeding.

8           Mr. Lichtman relies on the fact that it doesn't do
9  anything to the estate and, therefore, it is not good cause.
10  That is not the standard.

11          We went through our motion and showed what the legal
12  requirements were for issuing the writ and how we met them in
13  each case.

14          In this case, it is a filed lawsuit.  Mr. Rothstein is
15  the defendant.  One of his former partners is a defendant and
16  there are counterclaims going back and forth.

17          We have emails where there are lawyers within that
18  firm indicating that the best way to get to Mr. Epstein is to
19  go after his friends and his family.  We have Mr. Rothstein
20  showing the actual case files of the Epstein lawsuits to the
21  Razorback investors.

22          We have taken those depositions.  We have been able to
23  review a privileged log where there are emails and directions
24  to do research on the causes of action against Mr. Epstein and
25  we have an email from Mr. Rothstein telling the Razorback

1 representatives that these are the causes of action that they
2 have in their firm against Mr. Epstein which is why you should
3 invest in this Ponzi scheme.

4          One of the cases the firm had for one of the victims
5 was litigated for over a year in State Court and, at the same
6 time, they filed a Federal action with highly salacious
7 allegations, 156 count complaint demanding $20,000,000 of
8 damages and did not proceed with it for over a year.  We
9 believe that complaint was showed to some of the investors.  We
10 believe it is necessary to take his deposition in order to
11 litigate the issues that are present in this case, and I
12 believe and respectfully submit we have made a showing of good
13 cause; and, as I said before, we don't want to be interrupting
14 the Bankruptcy proceedings, but we do believe we filed the
15 appropriate motion to do it, and again reiterate that this is,
16 I think, the most judicial economy way of doing it because we
17 do have some relations to the facts; but, just because we are
18 not in the proceeding, doesn't respectfully mean we shouldn't
19 be able to have the right to depose this gentleman who is
20 intricately involved in the claims in this lawsuit.

21          THE COURT:  The Court is going to reserve ruling on
22 Mr. Ackerman's request.

23          Anything further?

24          MR. SHAWDE: Jack Shawde of Rasco Klock.

25          Begging the Court's indulgence, if you would give me

1  two seconds to ask the Court to reconsider the ruling on the
2  videotape.

3          To the extent that ruling, as I understand Your
4  Honor's statement from the bench, it was based on submission by
5  the Government under seal, this makes it very difficult to know
6  what we are arguing against since we don't know what the basis
7  of the Government's position is against videotaping.  It is
8  like going into a boxing match with both arms tied behind my
9  back.

10         To the extent that those concerns of the Government
11 are based upon Mr. Rothstein's physical appearance being
12 changed, I would like to point out to the Court that
13 Mr. Rothstein's appearance has been the subject of newspaper
14 articles, widely circulated.

15         I have in front of me, and I could gladly proffer to
16 the Court a Miami article dated December 12, 2011, which in the
17 opening paragraph discusses Mr. Rothstein's appearance at his
18 first day of testimony in the first round of depositions.

19         In fact, Mr. Rothstein's own counsel earlier in July
20 2011 advised a newspaper reporter what Mr. Rothstein's
21 appearance was to some extent and that was reported in the
22 South Florida Business Journal by the reporter who
23 Mr. Rothstein's own criminal defense lawyer communicated with.
24         So, although I don't know what the Government's
25 concerns are to the extent that those concerns are based upon

1   Mr. Rothstein's appearance, that has been the subject of

2   newspaper articles which I am sure everyone has read.

3           Therefore, not knowing what the Government's position

4   is, we would ask Your Honor to revisit the ruling on

5   videotaping given that there is definite harm that will happen

6   to our client if the jurors do not see a videotape.

7           That is known.

8           If the jurors do not see the videotape, under existing

9   case law, our clients' rights will be adversely affected.

10          I don't know what the Government's concerns are but I

11  can imagine they are hypothetical concerns, what if, what if,

12  what if.

13          If you balance those concerns, the fact that our

14  clients' rights will be affected if the jury is not allowed to

15  see the key witness testify, you balance the actual harm to our

16  client against the hypothetical concerns the Government raised,

17  our position is clearly the balance is in favor of videotaping

18  and we respectfully ask Your Honor to reconsider your ruling on

19  the videotape.

20          Thank you.

21          THE COURT:   The motion for reconsideration will be

22  denied.

23          All right.  Anything further?

24          All right.  We will stand in recess.

25          (Thereupon, the hearing was concluded.)

1                    C E R T I F I C A T E

2          I hereby certify that the foregoing is an accurate

3    transcription of proceedings in the above-entitled matter.

4
     March 10, 2012                \s\ Pauline A. Stipes
5    _____              _____
        DATE                       PAULINE A. STIPES
6                                  Official United States Court Reporter
                                   299 E. Broward Boulevard
7                                  Ft. Lauderdale, Fl 33301
     954.769.5496
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**A**

abetting 24:9,24
abide 38:1
able 4:3,18 7:6,12,15,16 8:1 11:14
17:6,21 21:16,19 29:17 40:11
41:22 42:19
above-entitled 45:3
absolutely 32:2
acceded 14:4
access 14:2 23:18
accommodated 27:7
accomplish 4:18 7:15 8:6,11
accurate 45:2
Ackerman 16:6,6 17:17 37:9,11,11
38:25 40:19,21
Ackerman's 42:22
acted 4:5
action 5:15 19:2 20:1 23:9 41:24
42:1,6
actions 3:9 11:1 23:9
actual 41:20 44:15
add 5:23
added 3:19 5:14
additional 19:3 26:2 33:23 35:6
address 2:13,23 4:10,23 6:9 8:23
13:11 20:12 21:10 31:23
addressed 11:10 15:11 37:1
adequately 21:24
Adler 1:4 2:2,12
admittedly 5:4 6:23
advance 16:11 41:3
advancing 33:19
adversaries 11:5 19:20 32:5,6
34:10,11
adversary 3:18,24 4:24 5:14 6:21
10:25 11:7 12:24 13:6 16:9 17:12
20:1,12,22 21:14 22:4 24:5 29:1
31:25 34:18 37:15
adversely 44:9
advise 7:6
advised 43:20
advisement 24:25
advocating 29:4
affirmative 24:22 25:1
afternoon 31:18
ago 3:13
agree 7:8 20:23 21:7 27:16 34:7
agreeing 30:21
agreement 3:20
ahead 10:18
aiding 24:9,23
albeit 36:24
Alex 18:6
Allan 19:25
allegations 16:13 42:7
alleged 24:17
allocate 31:6
allocation 31:20
allot 26:6
allotted 28:5
allow 14:24 37:19 40:11
allowed 20:15,16 21:8 22:18 44:14
allowing 15:7
America 18:1
amount 3:15 9:5 11:10 14:6 31:4,4
31:7 32:11 34:16
amounts 3:16
analysis 5:21
ancillary 38:12
animated 28:16
answer 13:16
answers 7:25 10:4,6 28:6
anticipated 27:18
anybody 8:8 36:1,1
apologize 2:21 28:19 40:19
apologizing 28:22,23
appearance 2:3,9 16:5 43:11,13,17
43:21 44:1
appearances 1:14 3:8
appeared 3:6
appearing 33:13
appellate 6:8
applicable 5:16
applies 6:13
appointed 33:16
appreciated 30:23
approach 2:9 37:9
appropriate 21:13 33:22 42:15
approximately 31:12

aren't 32:19
arguing 43:8
argument 29:2 36:25
arms 43:8
article 43:16
articles 14:4 44:2
asked 6:19 9:1,9,10 10:6 18:9,13
18:15 23:23 35:7
asking 9:14 12:14 19:19,20 20:2
22:3,9 33:10
aspect 6:14
aspire 3:24
assert 4:14
assess 21:24
assume 9:12
assuming 8:11
assured 27:14
attached 4:5
attempt 34:25
attempted 39:6
attempting 9:6
attention 9:19 37:24 38:4
Attorney's 1:20
authority 35:18 38:10 40:18
available 26:1 37:7
avenue 29:8
avoid 9:17
aware 32:8 33:1
awhile 28:18
A.U.S.A 1:19

**B**

back 28:18 34:19 36:15 40:23,24
41:16 43:9
background 36:13
balance 6:18 44:13,15,17
Ballamor 24:4,4
ban 30:1
Bank 4:3,21,21 9:4 19:16 32:3
Bankruptcy 4:13 6:2 16:21 19:2
33:19 34:19 35:11 37:22 42:14
Banyon 18:4 24:19 33:16,18,19,21
33:25
Banyons 18:8
Barry 24:4
Barzee 9:5
based 22:12 23:9 24:21 43:4,11,25
basis 17:23 43:6
battles 14:4
Begging 42:25
begun 34:24
behalf 2:4,15 4:13 9:9 18:25 19:4,5
19:25 25:15 33:13,15
Bekkedam 24:5,16
believe 11:24 20:24 30:5 34:15
39:3,8 40:22 41:6 42:9,10,12,14
bench 43:4
Berger 1:16
best 13:9 37:19 41:18
better 14:22 16:22 38:13,21
bifurcate 5:10
Big 4:20 11:6
billed 5:23
bit 17:11 33:4
Black 18:21,21
boat 22:13
Boden 32:10,11
Boden's 32:9
body 40:12
bottom 5:7 20:24
bought 7:20
Boulevard 1:16,20,24 45:6
bounce 36:15
Bowen 20:11,11
boxing 43:8
Brauser 20:1 31:1
breaches 24:9
breaks 31:16,18
brevity 18:22
brief 13:13 31:3
bring 9:18 37:24 38:3
bringing 41:2
brings 4:5 21:21 34:20
broke 12:17 31:15
brother 23:25
Broward 1:20,24 45:6
Bruce 18:25
build 6:8
bunch 33:8

Bureau 15:11 36:23 39:2,5 40:16
business 16:2 26:6,9 43:22

**C**

C 45:1,1
cabinets 32:10
calendar 3:25,25 4:2
California 40:10,17
call 12:16 32:5
called 4:20
camera 15:13,17
candor 22:15
can't 3:7 8:7 9:7,25 22:21 25:23
27:14 37:22
Capital 24:4
capital 22:14
car 7:21
career 14:3
case 1:3 3:2,3,4,19 4:3,10,11 5:21
5:21 6:2,11 8:7,8 9:16 13:21
16:10 17:4 20:20 21:11 22:1,6
23:16 29:19 32:10 33:6,17,20
33:24 40:10,17,23 41:1,13,14,20
42:11 44:9
cases 3:14,18,23 4:8,24 5:4,8,23
5:25 6:5,18 7:19,20 8:13,22 9:22
10:20,22 11:1,7 16:10,16 20:4,4
20:15,16 23:16 31:25 33:5,18
42:4
Casualty 2:5 17:25
categories 12:18
category 17:20
cause 5:15 37:2 39:21,23 40:22
41:9 42:13
causes 41:24 42:1
certain 4:13 10:20 13:25 14:15,16
14:16 23:9 34:5
certainly 6:4
certify 45:1
CFR 40:15
CFR's 40:7
changed 43:12
Chapter 2:11 33:23
characterization 20:23
charge 3:22 5:16
CHARLES 1:15
Charters 18:12
choose 40:18
Chuck 2:10
Circuit 16:12 17:5
circulated 43:14
circumstances 14:19,21 30:9
cited 26:4 38:12
citizen 29:15
civil 16:11
claim 6:6 12:19 17:23
claimed 12:8
claims 14:15 16:14,15 22:5 33:19
40:23 42:20
claw 34:19
clear 2:24 24:12 35:17
clearer 17:6
clearly 14:6,7 38:10 44:17
client 20:8 21:7 24:16,19 29:9
37:14 44:6,16
clients 17:19 20:3 34:17 44:9,14
close 3:22,25 24:16 31:15
closing 29:2
COHN 1:13
colleagues 2:15
collectively 18:9
Columbia 2:5 17:25
come 5:25 16:4 29:15 31:23
comes 32:25
commence 28:8
commencing 37:7
commented 31:1
comments 36:19
common 34:13
communicated 43:23
companies 19:9,11 23:4
company 18:1,1,2,22 19:1,17
compel 39:2
compelled 40:12
compelling 36:25
complaint 24:14 41:5 42:7,9
completed 3:25
complex 5:6 7:1 8:14
complicated 3:15

complied 3:10
compromise 30:9
conceivable 3:6
Conceivably 10:3
concept 7:5
concern 10:13 27:4 31:8 37:16
40:3
concerned 12:12 14:10,23 27:23
28:10 32:16,16,24 37:20
concerning 2:17 20:3
concerns 11:11 12:4 33:24 35:12
35:13,13 37:1 43:10,25,25 44:10
44:11,13,16
concluded 44:25
concluding 26:9
conclusary 12:9 24:15
conditions 36:11 37:8
conduct 17:22 20:16
conference 11:23
conferencing 26:14 36:22
confidence 24:17
confident 7:13 11:13
connection 32:5
connections 17:9
Conrad 19:5
consecutive 26:9
consider 23:16
consideration 17:15 34:1
consistent 36:9 36:15
consumed 14:7
consumer 7:19
contemplated 21:2 23:21 24:7
continue 26:9
contradict 4:12
control 3:8 4:3,4
conveyance 4:15
convinced 13:25
coordinate 34:15
copies 23:17
correct 19:14 28:5
cost 4:5 18:24
costs 18:25
couldn't 9:7
counsel 2:3,15 7:14,22 9:13 17:20
20:15,22 23:25 31:1 32:10 34:16
38:8 43:18
count 24:9,23 42:7
counterclaims 40:24 41:16
counts 25:9
couple 3:5 10:23
course 25:8
Courthouse 1:24
Courts 35:11,11,12
Court's 2:25 3:10 5:9 9:18 37:24
38:4 42:25
covered 28:9
cracks 34:5 37:25
created 14:20
creating 35:12
credibility 21:24 22:15
criminal 36:7 40:12 43:23
critical 8:12 21:22 23:11 30:5
cross 40:23
Crow 39:4
currently 21:17

**D**

damage 16:13
damages 42:8
date 23:21 45:5
dated 43:16
David 32:9
day 6:23,24 7:17 8:4,5,6,25 17:14
18:10 21:11 22:23 25:6 31:17
43:18
days 6:19,25 7:1 8:12,18 9:10
14:11,20,21 15:1,2 16:2,7,9
17:16,17,21 18:17 20:6,13,13,18
21:13 23:23 24:12 25:20,21 26:1
26:5,6,9 31:10 32:23 34:7,8
36:14 37:7
deal 2:17 6:9,16 38:23
dealing 38:16
dealt 38:19 40:15
DEBTOR 1:4
December 2:17 34:23 43:16
decide 36:14
declarant 10:9
defendant 6:2,17 9:4,10 13:7 31:6

40:12,23 41:15,15
defendants 4:14 6:8,14 8:2 9:3
12:7 16:17 20:1,11,21 21:5 22:4
25:15 34:9
defenders 21:6
defense 5:24 24:23 25:2 43:23
defenses 21:11 34:17
deferred 17:5
deferring 5:10
defined 34:21
definite 44:5
delicate 6:16
delicto 24:23 34:13,20
delineated 32:1
demanding 42:7
demeanor 21:24 22:15
demonstrate 5:13
demonstrated 12:13 15:24
denied 37:3 44:22
deny 38:17
depo 5:13 28:4
depose 6:17,21 12:13 13:7 17:7,22
19:14 21:1 22:7 23:5,11 24:13
25:23 42:19
deposed 8:19 19:15 27:5
deposition 3:12 4:9,18,20 5:7,12
6:23 6:24 7:9,10,10 8:12 9:23
10:2,5,14 11:14,16,16,18,20,20
12:11,22 13:4 15:21,25 16:3 17:1
17:3 18:9,10,18 19:19 20:17 22:3
22:5 23:7,8,14,20 25:6,21 26:1,2
26:7,8,12 31:10,24 32:12 34:12
35:4,5,24,25 36:21 37:7 38:9
39:24 40:12 42:10
depositions 5:18,19 6:19,24 7:17
7:23 12:23 13:21,21 14:5,7,8,11
15:7,8 21:9 33:24 35:12 41:22
43:18
Deposton 11:6
deprived 12:10 40:3
designated 36:23
desire 33:4
desk 39:18
determination 37:5
determine 35:22,23
devastating 27:13
didn't 3:7 5:17,18 33:8,22 34:7
different 3:17 13:12 19:6 20:22,22
20:22 34:6,6
difficult 6:14,25 43:5
direct 4:11 9:22 35:20
directing 2:25
directions 41:23
directive 3:10
disbelieve 30:5
disclosure 12:14
discovery 35:24 38:9
discreet 6:24 11:5
discretion 38:21 40:18
discretionary 40:8
discuss 3:11 23:13
discussed 7:5 13:12 23:25 36:13
discusses 43:17
discussion 20:19
dismiss 24:25 25:9
District 1:1,1,13 18:14 19:18 21:23
35:11
DIVISION 1:2
divulge 15:12
docket 3:1 5:10 39:22
document 37:1
documents 11:25 12:1,3 16:20
32:11 38:2
doesn't 15:9 30:3 41:8 42:18
doing 42:16
dollar 18:13
dollars 7:8 27:14
don't 5:1 6:4,9,20,22 10:24,25
11:22 12:1,10 14:12 16:7 18:10
18:16,17 20:23 21:9,13 22:7
24:11 29:18,21,22,25 30:8 31:23
32:15 34:5 35:9 36:18 37:25
39:25 40:1,21 42:13 43:6,24
44:10
drive 27:12
drove 28:11
Duane 24:3
due 6:3,6 12:8,10,19 13:25 28:17
35:9 40:3
duplicative 8:3

duties 24:10

**E**

E 1:24 45:1,1,6
earlier 43:19
easily 4:3 30:10
East 1:16,20
economy 16:22,24 17:8 37:20
42:16
Ed 34:22
Edwards 18:16 40:24
efficiency 35:13
efficient 11:4 35:15
efficiently 34:8,15 35:8
eight 26:5
eighth 18:12
either 7:20
email 41:25
emails 23:18,19 41:17,23
embark 6:5
encompassed 32:12
entered 36:16 39:4
entire 20:6
entitles 24:20
entitled 6:17 20:21
entry 2:25 3:1 5:10 39:22
Epstein 16:6,11 33:1,1,11 37:12
38:8 39:17,22 40:25 41:2,18,20
41:24 42:2
Epstein's 38:8
equally 5:16
equitable 34:14,20
especially 26:3
ESQ 1:15
essence 41:1
essential 4:9
essentially 34:18
established 5:11 39:23 40:22
establishes 37:2
estate 4:25 6:8 34:14 41:9
estimate 5:3
estoppel 34:14,20
everybody 3:3,8 7:25 10:3 11:16
11:23 18:16 25:23 39:24 40:4
evidence 9:22 35:21
evidentiary 35:18
exact 5:1
examining 20:7
example 7:18,21 32:9
excepting 13:8
exception 4:2
excluded 17:21
exercise 40:18
exhibits 33:7
existence 21:17
existing 44:8
expect 9:13
expedited 3:1
expired 3:20
explain 9:1
expressed 37:16
extensively 40:7
extent 4:1 8:21 14:22 17:14 43:3,10
43:21,25
extremely 2:21 5:6,9 32:16
eye 2:14 28:21

**F**

F 45:1
face 5:19
faced 32:8
facets 7:10
facie 4:11
facilitated 26:12 36:21
facility 36:22
fact 15:9 23:8,15 25:25 26:3,4 41:8
43:19 44:13
facts 4:12 5:24 11:6 16:19 24:17
39:8 42:17
fair 11:10 20:25
fairly 5:5
faith 4:13,15
fall 17:19
family 41:19
far 14:10,22 27:23 28:1,10
fashion 7:12 29:20
faulting 15:8
favor 33:25 44:17
fear 39:16

February 1:8
Federal 1:24 42:6
Federal's 18:23
feel 24:21 25:3,11 32:20
Fercoso 20:10,10 21:7,12
Fercoso's 21:6
fiduciary 24:10
fight 14:3
figure 7:16 12:20
figured 33:7
file 19:2 32:10
filed 3:8 12:6 17:7 23:9 26:16 34:6
34:11,22,23 37:1 39:12 41:14
42:6,14
files 16:17 41:20
filing 3:20 39:22
fillings 33:19
financial 14:16 15:15
finding 6:5 12:3
finds 15:24 36:25
fine 23:24
Fire 18:22
firm 24:19 41:2,3,18 42:2,4
first 2:14,22 4:17 8:6 11:16 21:8
22:18,19,21 23:7 31:1,9,24 32:12
35:4 43:18,18
five 17:1 29:14 31:17
FI 1:17,21,25 45:7
flights 27:12
filip 12:1
float 22:13
Florida 1:17 43:22
focus 4:23 30:24 36:10
focused 4:17
folks 2:1
Following 2:25 4:6
foregoing 45:2
former 9:4 41:15
forms 17:22
Fort 27:15
forth 37:8 40:24 41:16
forward 16:4 29:16 35:1
forwarded 38:15
four 17:1
fraudulent 4:15
free 15:12
friends 41:19
front 6:10 29:4 43:15
frozen 23:15
Ft 1:2,7,17,21,25 45:7
full 20:25 21:11 22:20 25:6 31:16
32:11,23
fund 20:6 33:16
Funding 19:5
funds 4:21 7:20 13:8 20:20 32:4
Furr 33:14,15
further 10:8 26:18 42:23 44:23

**G**

gather 23:5
general 32:10 40:2
generous 14:21
gentleman 30:4 42:19
getting 16:18
Gibraltar 4:21 9:4 19:16 32:4
give 32:9 33:10 42:25
given 7:13 23:22 44:5
gives 8:11
giving 28:12
gladly 43:15
go 3:14 6:7 7:24 10:18 20:18 35:1
39:8 41:19
goal 3:24
going 4:7 6:25 8:23 9:18 10:25
13:22 15:23 20:7,15,16 22:10,13
23:13 27:3 28:2 35:11,21 37:4
40:2 41:16 42:21 43:8
good 2:1,10 4:13,15 19:4,25 23:1,2
26:13 29:17,23 37:1 43:5,10
40:22 41:9 42:12
goods 7:19
gotten 24:24
Government 1:19 14:4,23,25 26:4
26:13 29:17,23 37:1 43:5,10
44:16
Government's 38:7 39:12 43:7,24
44:3,10
go-around 7:12 22:19,19,20,21

31:5
gracious 8:11
grant 11:13 30:21 37:18 39:17
grants 19:8
Great 26:24
greatest 29:13
group 12:17 13:8 19:1 34:10
groupings 33:12
guarantee 32:19
guess 2:8

**H**

hadn't 4:22
half 18:10 19:3 28:15 31:19
handle 34:15
happen 4:10 44:5
happened 28:17 41:1
happy 15:15 22:8
hard 5:21 33:5
harm 44:5,15
haven't 23:25 24:24
headed 39:16
headline 12:9
hear 16:5 26:18 28:20 38:6 40:22
heard 13:18 20:19 21:7 26:18 32:17
36:1
hearing 1:12 36:5 37:15 44:25
hedge 20:20
held 26:23
help 5:24 12:3 36:13
helped 27:8
HERB 1:6
Herbert 2:11
highlighted 7:18 10:21 32:7
highly 42:6
hitchhike 16:23
Hofrichter 18:6,6,20
home 29:22
Honestly 6:18
Honor 6:15 12:6 17:18 19:8,15,24
20:23 22:2 23:1,22 24:1,1 25:14
26:21 27:24 28:20,24 30:6,15
34:4 37:9 40:6,13 44:4,18
HONORABLE 1:13
Honor's 36:9 43:4
hour 19:3 25:12 27:12 31:10,16,20
hours 17:1 18:9,15 21:1 24:7 25:4
25:23 28:11 31:13,19 32:17,22
32:22
hugely 3:15 32:24 36:2
humbly 2:16
hundreds 7:8,8 27:14 33:7
hurt 30:4
hypothetical 44:11,16

**I**

identified 8:14
imagine 44:11
impeach 9:6
impeaching 9:5
impeachment 8:22 9:24 21:19,20
35:21
imperative 27:22 29:11
imperil 24:23 34:13,20
implications 13:25
important 9:12 28:24 34:17
imposed 36:7
impression 31:24
incident 28:17
included 7:17,17 18:11,18
including 36:22
inconsistent 9:25
indemnity 23:3
independent 33:20
indicating 33:3 41:18
individual 20:16,16
individuals 14:16
indulgence 42:25
inherent 14:1 31:2
inordinate 3:15
inquire 20:4
insensitive 6:22
instance 7:18 9:8
instances 3:5 11:3 31:5
insurance 17:23 18:1,1 19:8,9,10
19:17,20 23:4 32:20 33:25 34:1
insured 18:4 23:6,10
insureds 18:3
insurer 18:12

insurors 10:23 17:19 18:7,9,15
  23:15,25 32:17 33:11,18
insuror's 32:25
intention 13:20
interest 6:21 32:20
interrupting 42:13
interview 2:18
intricately 42:20
invest 42:3
investment 16:18
investors 24:8 41:4,5,21 42:9
involved 3:16 16:25 18:7 32:13
  42:20
involving 16:13 18:8
ironshore 23:3
isn't 8:6 9:15
issue 2:23 6:3,8 12:19 15:4,5 21:20
  21:21 26:11 31:2,22 33:25 37:17
  38:3,11,14,18,20 39:21 40:15
issued 40:11
issues 2:17 9:18 10:19 15:10 16:23
  16:23,24 19:6,8 20:3,8 21:10
  30:24 32:7 33:22 34:9,13,14
  42:11
issuing 41:12

**J**

Jack 21:4 42:24
jail 22:12
James 1:13 18:21
Jeffrey 16:6 37:11 40:24
jewelry 7:21
Jim 19:4
join 18:13 26:24
joins 18:23
joint 19:6
jointly 26:13
Josefsberg 26:20,21,24 27:2,20
  36:24
Joseph 16:6 19:25,25 37:11
JOSEPHS 30:17
Journal 43:22
Jr 18:21
judge 1:13 3:13,21 5:3 6:15,18 7:14
  9:4 10:17 13:19 22:14 25:8 30:21
  35:22 38:15 37:4,13,15 38:1,14
  38:18,23 39:1,4 40:11
judicial 16:22 17:8 37:20 42:16
July 43:19
June 23:21 26:8,9 37:7
jurisdiction 36:5 37:16 38:2 39:1,4
jurors 28:25 44:6,8
jury 9:12 21:22,24 22:11,14 29:3,5
  29:24,24,25 30:4,8 44:14
justify 12:15

**K**

Katrina 26:4
Keene 18:25,25
key 22:16 44:15
Klock 21:4 42:24
knew 4:11
know 2:20 3:14 6:20 8:5 12:1,16
  15:9,9 22:12 26:17 27:8,20 28:1
  28:14 29:7 32:15 33:22 40:21
  43:5,6,24 44:10
knowing 4:1,17 44:3
knowledge 3:5 4:10,11
known 4:12 44:7
knows 4:19

**L**

lack 2:20 6:6 12:8 16:22 25:9
large 5:5 15:14
Las 1:16
late 34:11
Lauderdale 1:2,7,17,21,25 27:15
  45:7
LaVECCHIO 1:19 13:18,19 15:2,4
  27:8 28:14 38:10 40:14
law 44:9
lawfirm 16:10 19:13 24:10
LAWRENCE 1:19
lawsuit 35:19 41:14 42:20
lawsuits 41:20
lawyer 43:23
lawyers 41:17
lead 27:3,17

leads 11:18 12:5
leave 37:4
led 9:4
left 14:13 37:20,23
legal 41:11
legitimate 12:19
length 36:14
letter 26:22
Levinson 32:8
Lichtman 1:15 2:10,10 8:16,20,23
  10:3,13,16,19 11:9 12:23,25 13:3
  13:6,11,15,24 15:8 23:6 28:1,19
  29:1 30:20,21 31:11,14,22 36:2,9
  36:18 37:14 39:15,16,20 41:8
Lichtman's 17:11
lies 22:13
life 25:10
light 25:25 26:4
Likewise 24:18
limit 14:6 34:16
limitation 21:13 22:23
limitations 26:22 35:25
limited 14:4 20:3,12
limiting 35:5
line 5:7 20:24
lines 4:6
linked 16:18
listening 30:12
litigant 9:22
litigate 42:11
litigated 16:16 42:5
litigating 6:8
litigation 3:17 6:7 10:1 16:12 18:7
  18:14 19:16,17 33:20 34:6,22
  35:2 38:12
little 33:4
live 15:2 25:11
located 38:22
log 41:23
logical 35:12
long 15:16 18:11
look 2:14 6:11 28:21,24,25 30:1
looking 8:10
losing 14:3
loss 19:6
losses 24:8
lost 37:25
lot 4:4 5:21 7:24 10:14 14:13 32:2
  34:6
love 11:21
loves 39:24
lunch 31:15,16
lying 29:8

**M**

main 3:2
making 14:15
Management 24:4
manpower 15:15
March 45:4
Marine 18:22
Marshal 15:11 27:6,7 29:17 38:19
  40:8
marshals 15:14 38:15,15 40:9
Marshal's 27:11 29:14 40:15
Mary 9:4
massive 3:16 4:3
match 43:8
material 8:5,6 23:16
materially 5:6
materials 23:23
matrix 3:3
matter 21:10 38:22 45:3
matters 7:11 32:8
maximum 14:23
McIntosh 22:25 23:1,3,22 24:2
meal 15:23
mean 42:18
meant 17:10
mechanism 7:16 10:11
mentioned 24:14
merits 2:13 4:24
met 41:12
methodology 11:18
Miami 13:22 27:15 43:16
Middle 18:14
million 18:12
millions 7:8
mind 31:14

mindful 5:9
minor 12:4
minute 16:8 31:6,20 33:8
mishaps 29:18
moment 23:13
monetary 4:24
money 3:16 6:8
morning 2:1,10 19:4,25 23:1,2
  26:20,21 31:16
Morris 34:25
Morse 4:21 34:22,23 35:5
Morses 32:4
motion 1:12 2:13 5:10 10:22 17:7
  24:24 33:2 37:18 38:7 41:11
  42:15 44:21
motions 17:5 39:18
multiple 15:7

**N**

National 18:25
nature 3:14
necessary 13:14 22:1,5 23:7 42:10
necessitate 14:1
need 3:11 5:7,13,22 11:17 12:13,13
  14:17 15:24 17:1,14,21 20:7
  23:19 24:12,25 25:3,7 33:8 36:18
  38:3 39:25
needed 5:17
needs 16:8 17:11 22:10,14,20
  40:21
neighborhood 5:2
New 13:8
newspaper 43:13,20 44:2
nine 26:9
non-existent 15:6
noon 31:15
normally 3:16
Norris 24:3,3,3 25:17,18
note 39:20
number 5:2 12:20 14:17 20:5 21:9
  21:9 24:11
numerous 35:12
Nurik 12:1,2

**O**

object 13:20,22 16:4,7 18:17 22:22
  24:11 34:7
objecting 39:13
objection 16:5 20:2 24:15
objectionable 20:14
objections 7:11 16:22 26:14,15
objectors 25:19 26:17
objects 15:20 16:1
obvious 29:7
occasions 8:25
occurred 31:5
odd 6:18
office 1:20 27:11 29:21
Official 1:23 45:8
okay 11:8 13:10,15 15:3 31:21
  40:20
Olas 1:16
once 11:19 27:21 30:3
ones 22:2 32:1
opening 43:17
Operations 34:22
opportunity 4:23 11:13 19:13 21:1
  39:24
opposed 14:25
orally 15:16
orchestrated 32:13
order 2:25 3:1 5:9 14:8 21:22,23
  27:4 36:13 39:5 42:10
ordering 37:6
orders 7:5,12 11:10,14 36:16
Oregon 27:12
original 19:1
ought 11:3 31:7
overlooks 23:8
overly 26:3
o'clock 31:17

**P**

page 15:5
pages 3:18 10:14 21:17 24:22 26:1
  28:1,3,8
paper 7:18
papers 3:18 4:20 7:4 20:24 40:22

paragraph 43:17
parceling 37:4,12
part 9:19 10:24 11:2 17:2,10,13
  19:1 28:16,17 30:1 32:3 34:10
  41:6
participate 5:12 9:23 12:21,25 13:5
  19:7,9,10,22 20:3 21:8 22:18
  32:18,21 37:19,22
participated 23:6
participating 37:12 38:8
participation 31:2 35:14
particular 9:4 20:8 24:11
particularly 21:1
parties 2:8 5:13 7:7 12:21 13:1,3,22
  13:24 14:1 19:6 32:19 35:1,10
partners 16:13 41:15
party 3:2 5:12 10:1 12:8 15:20 16:1
  33:11 37:22 40:11
path 6:5
Paul 18:21,22
Pauline 1:23 30:14 45:4,5
payee 19:7
paying 16:24
payment 24:18
Pearson 32:8,14 33:6
pending 3:17 10:20,25 17:4 18:14
people 3:5 4:22 6:20 29:16
perfectly 22:8
period 6:24 7:17 8:25
permit 35:14
permitted 19:21,21
person 27:5,10 36:6
persuasive 29:9
pertain 7:9 32:11
pertains 26:11
pervasive 29:10
physical 43:5
picture 17:6
piece 15:23
pieces 3:17 18:7
place 4:19 10:12 13:22 14:11 20:5
placed 35:25
plaintiff 19:10
plaintiffs 4:21
plaintiff's 6:11 24:14
play 34:20
pleaded 24:20
pleading 25:9 28:22
please 2:9 13:19 16:4 33:10
pleased 7:6
pleases 2:22
podium 2:9 16:4
point 8:13 9:20 10:16 11:22 17:8
  17:22 25:15 29:9 30:6 33:6 36:2
  40:8 43:12
pointed 24:6 31:3
pointless 2:19
points 34:6
policy 18:13 19:11,20 32:20 33:25
Ponzi 3:14 14:14 16:11 32:14 35:10
  39:9 41:3 42:3
position 6:6 16:8 17:11 18:23
  21:22 26:17 37:14,21 38:8,17
  43:7 44:3,17
possibly 25:2
power 14:6,8
powerful 28:14
practical 21:10
practice 38:13,22
prayer 24:8
precautions 15:6
prefer 27:15
prejudice 32:24
present 10:1,5 13:3 15:20 16:1
  42:11
presentation 28:15,16
press 30:1
presume 10:5
presumptive 25:3
pretty 33:10
Preve 21:5 25:15
prevent 10:12
previous 22:13
previously 33:3 38:12
prima 4:11
prior 9:25 17:20 23:23,23 28:3
priorities 30:17
Prison 38:19
Prisons 15:11 36:23 39:2,5 40:16
privileged 41:23

probably 6:14 36:12
problem 7:2 16:8 18:11 35:3 37:12
procedure 11:24
procedures 20:5
proceed 42:8
proceeding 16:21 22:4,20 28:2,20
  30:2 37:15,22 38:14 39:11 41:7
  42:18
proceedings 6:21 16:9 20:22 21:6
  21:15 24:5 29:2 34:18 42:14 46:3
process 6:3,7 11:15 12:8,10,19
  13:25 31:3 35:9 39:6 40:3
processes 2:19
produce 39:2 40:9
producing 36:10
product 12:14
proffer 3:12,21 43:15
proffered 40:1
program 39:7
promise 27:25
property 34:14
proposal 2:8 25:20
prorata 16:24
prospective 6:12
protection 39:7
Protective 29:14,17
protocol 7:5,12 9:19 11:10,14
  36:16
protocols 7:9
prove 22:6
proves 29:9
provides 5:24 25:4
proving 4:9
public 29:25
publicly 15:12
purpose 8:9 10:10 16:17
purposes 8:22 19:15
pursuant 36:10
push 27:10
put 4:7 7:25 12:9 20:5 29:24 32:22
putting 4:23 6:5
P.A 1:4 2:2

_____
Q
_____

question 8:15 9:10 20:12 27:17
  31:9
questioning 12:21 13:5 17:12
questions 7:24 8:2,2,3 9:1,8,14
  10:4,5 13:15 14:13 16:18 19:21
  28:6 35:5,6
quote 24:19

_____
R
_____

R 45:1
rain 28:11
raise 33:22
raised 6:3 33:8 44:16
Rasco 21:4 42:24
Ray 3:13,21 5:3 6:15 7:15 25:8
  36:15 37:5,13,16 38:1
Razorback 4:20 13:8 16:15,17 18:8
  19:5,8 32:18,20 34:10,21 36:19
  41:5,21,25
reach 3:24 7:22 9:8 11:14
reaching 9:19
read 10:4 14:12 26:15 28:3,15
  40:17 44:2
real 5:4
realized 4:8
really 5:22 6:13 16:7 20:20 25:3
  36:14
reason 8:7 9:7 16:9 21:12 22:22
  28:10,11
reasonable 25:22 26:2,3
reasons 27:12 29:5,11
recall 5:1 6:1
recalls 36:4
received 3:3
recess 44:24
recision 23:9
recollection 13:9
recommend 26:13
reconsider 43:1 44:18
reconsideration 44:21
record 2:23 3:2,2,23 11:3
refer 21:5
regard 6:13 19:7 41:3
regarding 14:13 19:19 26:4 33:20
  33:23

Regent 10:22
Regents 20:12 24:6
Regions 20:20
rehash 2:19
reiterate 25:16 42:15
related 10:16
relates 37:17 38:2
relating 34:13 35:5
relations 42:17
relationship 17:9 24:16
relevant 10:21 31:25 38:3
relief 24:8 30:22 38:17
relies 41:8
relying 35:4
Remember 22:2
remote 32:4
remotely 14:9
repeatedly 7:5
repetition 10:12 27:23
repetitious 17:10
repetitive 27:24,24,25
reply 15:5 25:13
reported 1:23 3:18 43:21
reporter 1:23 43:20,22 45:6
represent 17:19,24,25 18:6 21:5
  23:3 24:4 34:9
representatives 42:1
representing 37:11
represents 18:21 20:11
request 19:8 35:14 36:10 37:3
  38:11 42:22
require 15:14 23:5
required 34:16
requirements 41:12
rescind 33:25
research 41:24
researched 40:7
reserve 42:21
resolve 34:25
resources 15:15
respect 2:16 16:18 17:15 29:13
  30:24 34:1 35:18 36:19 38:8
  39:20 40:3
respectfully 37:3 42:12,18 44:18
respective 3:9
respond 36:18
respondents 12:5,7,17
responding 12:8
response 32:7 34:22 39:12
responses 3:1
review 23:19 41:23
reviewed 2:7
revisit 27:21 44:4
revisiting 11:22
right 2:6 15:22 18:5 20:9,14 22:24
  23:11 25:11 26:11 31:12 36:1,5,9
  39:14,19 42:19 44:23,24
rights 44:9,14
rise 34:4,7
RLI 2:4 18:1
Robert 20:10 33:14,15
room 7:25 12:2
Rosenfeldt 1:4 2:2,11
Rothstein 1:4 2:2,11,18 6:17,22
  7:20,25 9:1,6,9,15 10:6 11:25
  12:2,13,21 15:21,25 16:12,16
  17:22 19:14 20:5 21:1,25 22:7,12
  22:14 23:5,12 24:9,13 15,19
  25:24 27:4 28:3,25 29:6,10,14,21
  33:20 35:24 36:6,22 37:6 39:2,25
  40:9 41:14,19,25
Rothstein's 4:8 8:18 11:20 16:2
  22:5 23:20 25:1 30:7 34:12 41:2
  43:11,13,17,19,20,23 44:1
roughly 31:20
round 13:20 17:2,13 21:8 43:18
RPR-CM 1:23
Rule 25:4
ruled 11:19,21 27:21
rules 21:2 24:7
ruling 5:10 17:5 36:9 42:21 43:1,3
  44:4,18
rulings 35:18

_____
S
_____

s 45:4
sake 18:22
salacious 42:6

sat 11:20 14:10
satisfied 11:23 28:21
save 8:3 11:4
saw 7:4
saying 22:9,11 28:2
says 15:5 22:1 32:25
scheme 14:16 16:11 35:11 39:9
  41:3 42:3
schemes 3:14
Scherer 19:5
Schmoekler 2:4,4 17:18,18,25 18:4
  18:5
scope 5:5
Scott 2:4 4:8 9:14 17:18 33:13,15
  38:5
Scott's 5:7,22 6:12
screens 29:25
se 16:7 20:13
seal 43:5
sealed 37:1
second 3:12 5:12 10:6 11:16 13:20
  15:21,24 16:2 17:2 18:18 21:21
  22:20 23:14 25:21 26:7 27:2 35:5
  35:24
Secondly 34:21
seconds 43:1
security 15:6,10 16:23 27:11 29:13
  30:7,9 35:13 36:25 39:1
see 9:7 11:22 14:13 21:9,13 22:14
  28:14,22 29:5,11,18 30:4 38:18
  44:6,8,15
seek 13:7
seeking 19:7 20:4
selfish 6:20,23 33:4
sell 28:16
sense 16:21 17:8 39:9 41:6
sensitive 6:4,16
sentence 36:7
separate 7:23 8:25 11:2,5 34:9,17
separately 7:24
series 9:1
seriously 2:21 3:22 5:20
served 3:1,4,6
service 2:23 15:11 27:6,7 29:14,18
  38:19,19 40:9,16
set 37:8
sets 11:6
seven 7:22 15:5 18:7,8,15 19:1
  21:1 24:6 25:3,23 31:10,19
seventy 31:13
share 15:16 16:24
Shawde 21:4,4,19 25:15 42:24,24
shorten 21:14
shortly 4:2
shouldn't 5:20 9:11 42:18
showed 16:17 41:11 42:9
showing 29:25 30:8 39:21 41:20
  42:12
Shutts 20:10,11
significant 3:16 4:19 9:5 16:10,15
  16:13
Silver 19:4,4,15,24 32:17 34:3,4
  40:6
Silver's 36:19
similar 16:15 26:5
similarly 10:23
simple 6:5
simpler 25:10
simply 5:14 24:12 25:11 37:6
sincerity 28:23
Singerman 1:16
single 13:7
sir 18:19,24 19:23 20:9 21:3 26:20
  27:19 34:2 36:17,20 38:5,6
sitting 22:12
situated 10:24 11:23
situation 26:5
six 34:9,17
skimming 29:7
slip 34:5
smaller 6:4
smallest 32:11
smart 28:1
smooth 29:8,9
snipits 22:21
somebody 3:7
somewhat 39:9
sorry 2:16
sought 38:3
South 43:22

SOUTHERN 1:1
speak 40:6
speaking 13:24
speaks 15:7
specific 4:10
spend 6:7 9:13
spent 5:22 9:5 31:24
Spinoza 10:22 13:8
spite 27:11
split 25:5
St 18:21,22
stage 14:3 24:24
stake 7:8,13
stand 17:8 32:17 44:24
standard 5:11 41:10
standing 29:3
standpoint 16:22 23:24 39:10,10
start 2:8,23 3:11,12 28:2,20 31:11
started 31:15
state 2:3,9 4:5 11:1 16:5 16:16 19:16
  35:11 38:13,14,18,22,22 40:6,10
  40:10,14 42:5
statement 9:25 43:4
statements 24:15
States 1:1,13,20,23 45:6
stayed 19:17 23:16 33:18
step 10:8
Stettin 1:8 2:11,16
Stichter 33:13,13,15
Stipes 1:23 45:4,5
stipulation 7:22 9:8,19 35:3
stonewalled 23:17
story 30:16
straight 5:19
streamline 7:9 11:15
strictly 38:13
sub 10:19
subject 4:14 32:14 34:12 39:5
  43:13 44:1
submission 28:12 43:4
submissions 2:7 12:6
submit 10:8 42:12
submitted 29:3
substantial 4:24
substantive 21:10 35:21
sued 5:14 20:19,25 24:6,7 34:17
sufficient 5:15 14:20 25:9 39:23
suggested 17:20 23:6 25:12
suggesting 20:18
suit 34:23
Suite 1:17
support 25:1
supposedly 24:18
sure 30:7 33:4 34:4 44:2
susceptible 20:14
suspect 10:3 36:14 39:19

_____
T
_____

T 45:1,1
tag-along 16:23
take 2:21 3:22 5:17,19,20 6:19 7:16
  8:12 10:8 12:10 15:5 19:19 22:21
  23:8,19 24:25 37:21 39:23 40:12
  42:10
taken 6:25 11:6 14:8,18 41:22
talk 20:21 39:24
talking 9:21,23 12:24 13:1 25:6
  32:3
tape 29:22 30:4
taped 27:22 28:11
taping 30:8
TD 4:2,21 19:16 32:3
telephone 26:13
tell 2:15 5:1 11:9 27:8 29:17
telling 9:2,9,14 13:22 41:25
terms 12:9 40:2
testified 17:9
testifies 5:24
testify 29:16 44:15
testimony 8:12 7:1,11 10:15,21
  11:6 21:25 24:22 25:1 31:13 32:2
  36:11 37:2 40:1 43:18
thank 18:5,19,20 19:12,23,24 20:9
  21:3,4 24:1,2 25:17,18 26:23
  30:12,12,19,21 34:2 35:16 38:5
  38:24 40:5,13 44:20
thereof 2:20
thing 6:13 15:4 33:1,6
things 4:9 8:10 32:13 34:5 38:16

| | | |
|---|---|---|
| think 3:4,10,18 4:4 5:2,17,18 6:12 6:14 7:4,21 10:11,21,23 11:1 12:7 14:20,21 18:16 23:8,24 25:7 25:25 27:21 30:8 31:1 35:8 36:2 36:4,12,18 37:19 40:1 42:16<br>third 33:11<br>thought 2:19 5:11 11:11<br>thousands 27:14<br>three 17:19 27:12 32:23<br>three-quarters 25:12<br>tied 39:9 43:8<br>time 3:15,20,23 5:22 6:7 7:7,13 8:1 9:5,14 10:6 11:4 13:17 14:7,10 19:3 20:7 21:14 23:5,7,19 24:12 25:12 26:2,19 27:6,7 31:4,4,7,24 32:25 33:1,3,11,11,11,12,22 34:6 34:16 35:16 37:4,13 39:10 42:6<br>timing 23:14 30:25<br>Timothy 24:3<br>today 28:12 32:19 36:9,13<br>tolling 3:20<br>tomorrow 39:18<br>tons 12:14<br>top 18:13<br>topics 32:12<br>transaction 4:16<br>transactions 14:16 32:13<br>tranacript 1:12 8:7,8 10:9 11:15 14:19 26:1 28:15 29:3<br>transcription 45:3<br>transcripts 8:18,21 9:22 14:12 21:17<br>trial 4:2 10:10 21:23 22:11 29:24,24<br>trials 9:13<br>tried 38:25<br>trip 30:18<br>true 28:5<br>truly 27:7<br>Trustee 1:6,15 2:11 4:7,20 5:14 6:1 8:1 9:9 11:22 14:15 15:5 16:20 17:20 20:2,4 21:14 22:1,5,6,9,11 22:13,16 25:5 26:13,25 31:7 33:16,21,23 34:18 38:2<br>Trustees 37:21<br>Trustee's 2:8 4:11 16:8 22:1 24:5,8 25:13,19<br>truth 9:2,10,14 30:14<br>truthfulness 21:25<br>try 14:3<br>trying 33:24<br>turned 32:23<br>two 4:9,22 8:25 10:19 14:11,12 18:11 20:5 21:5,9 27:12 28:11 31:16,18 34:9 43:1<br>type 8:10<br>typed 29:2<br>types 35:10<br>typically 4:12<br><br>**U**<br>ultimately 37:23<br>unasked 14:13<br>unavailable 10:10<br>underlying 39:20<br>understand 4:7 8:17 12:18 24:21 27:5 39:25 43:3<br>understanding 20:14 35:4<br>undertaking 15:14<br>undertook 4:6<br>Union 18:12,25<br>United 1:1,13,20,23 45:6<br>unreasonable 18:16<br>unsavory 29:16<br>unsuccessful 35:1 39:7<br>upheld 30:7<br>use 7:10 8:8 21:17,19,20 36:21 37:19<br>useable 32:2<br>useful 11:7<br>uses 24:15<br>usually 31:17<br>usury 34:19<br>U.S 4:21 15:11 38:19<br><br>**V**<br>value 4:25<br>various 2:7 12:7<br>victimized 35:10<br>victims 34:10,21 42:4 | video 11:23 15:10 26:13,25 27:3,15 29:21 36:21<br>videoed 27:20 29:20 30:6<br>videoing 30:3<br>videotape 21:22 22:21 27:1 43:2 44:6,8,19<br>videotaped 11:21 22:10,19,22<br>videotaping 11:21 22:11 22:17 37:2 43:7 44:5,17<br>vlew 10:24<br>views 12:6<br>virtually 13:6 15:6<br><br>**W**<br>walk 13:12<br>want 2:20 6:5,22 10:4 11:9 19:9 20:18 21:20 24:12 26:24 28:10 29:16,18,21,22 30:3,7 31:22,23 32:6,15,15,17,21 39:23 42:13<br>wanted 6:4 28:13,13,19,21,22 32:18<br>wanting 29:5<br>wants 21:14 29:15<br>wasn't 14:12 28:21<br>waste 27:13<br>watch 28:13<br>watching 29:22 30:13,14<br>way 3:6 7:6 22:17 30:9 35:9,15 38:16 39:7 41:18 42:16<br>ways 16:14<br>weeks 3:13 18:11<br>went 31:17 38:25 41:11<br>weren't 22:22<br>we've 6:19 25:25<br>widely 43:14<br>willing 16:12 29:1 37:17 38:1<br>wisdom 7:14<br>wish 3:22 4:4 6:9,21 9:17 13:18 15:13 36:1<br>wished 5:12<br>wishes 26:18<br>witness 14:2 22:15,16 30:5 44:15<br>wonderful 27:9<br>won't 11:7 13:14 21:17<br>word 16:22<br>work 7:21 11:10,24 12:14 31:10 34:8<br>workable 11:24 12:4<br>worked 5:21<br>working 7:3,14 31:14 33:5<br>works 18:16 29:18<br>world 9:7<br>worth 30:17<br>wouldn't 8:3<br>writ 2:13 17:7 33:2 38:11 38:11,14 38:16,20 39:13,17,18 40:7,10,11 40:15 41:12<br>written 15:16 28:12<br>Wyoming 27:12<br><br>**X**<br>X 31:3,4<br><br>**Y**<br>yeah 14:17<br>year 3:25 34:11 42:5,8<br>years 28:16<br>York 13:8<br><br>**Z**<br>Zurich 2:5 18:1<br><br>**$**<br>$18,000,000 20:19,25 24:6<br>$20,000,000 42:7<br>$4,000,000 20:1<br>$500,000,000 5:3<br>$70,000,000 17:23 23:4<br><br>**1**<br>10 1:8 6:19,23,24,25 7:1,17 8:12,18 8:25 9:10 14:20,21,23,25 15:2 16:1,7,9 17:16,17,21 18:9,15,17 20:6,13,13,18 21:13 22:23 25:20 25:21 26:1,6 29:15 32:22 34:7,8 37:7 45:4<br>100 29:5 | 1000 1:17<br>106 3:1<br>11 2:11<br>11-61338-CIV-COHN 1:3<br>112 3:19,19<br>12 32:17,22 43:16<br>120 39:22<br>122 3:19<br>123 3:18 4:8 5:17,19<br>13th 34:23<br>15 26:10<br>156 42:7<br><br>**2**<br>20 6:18<br>2009 17:4<br>2011 43:16,20<br>2012 1:8 3:25 23:21 26:8,10 37:8 45:4<br>25 39:17<br>26 32:5<br>29 5:25 6:24 7:16 9:12 12:23<br>2900 6:18 10:14 21:17 24:22 25:25 28:1,3,8<br>299 1:24 45:6<br><br>**3**<br>30 23:23 25:4 33:7<br>300 1:16<br>32 33:16<br>33301 1:17,21,25 45:7<br><br>**4**<br>4 23:21 26:8 37:7<br>45 31:20<br><br>**5**<br>500 1:20<br><br>**7**<br>7 33:23<br>70,000,000 18:13<br><br>**8**<br>8:30 31:15<br>86 5:11<br><br>**9**<br>954-356-7255 1:21<br>954-525-9900 1:18<br>954-769-5496 1:25<br>954.769.5496 45:7 |